JOSEPH W. MANSFIELD *vs.* NEW ENGLAND EXPRESS COMPANY and trustee.

*Trustee—when charged on disclosure.*

A person summoned as trustee will be charged when he declines, in answer to an interrogatory calling therefor, to state the facts which may be important in determining his true legal position towards the principal defendant, and in testing the correctness of his own legal conclusion that he does not owe the principal defendant, or has nothing in his hands for which he is legally accountable to him.

ON EXCEPTIONS to the ruling of *Goddard, J.,* of the superior court, for the county of Cumberland.

ASSUMPSIT on account annexed for three hundred and thirty-nine dollars.

Ezra Carter, summoned as trustee, after pleading and putting in his general denial, disclosed as follows:

*Interrogatory* 1. State when and where the New England Express Company was organized,—when did it obtain its act of incorporation,—how was it organized,—who was its president,—who were the directors in the several States? State fully its history. When did you resign your office as president or director of said company?

*Answer.* I decline to answer the above as irrelevant, except by direction of court.

Mansfield *v.* New England Express Company.

*Int.* 2. Give a full statement of your connection with said company.

*Ans.* I decline to answer for same reason as above.

*Int.* 3. Were you in any way connected with said company? If so, in what? How much stock of the company stood in your name? What funds have you held of said company? What property have you had in your possession belonging to said company? State fully.

*Ans.* I was a director, and at one time president. I received no funds nor property as inquired of, and had neither in my possession at any time before service of writ. I never owed the company anything. What stock stood in my name, if any, I consider irrelevant to this matter, and decline to answer unless ordered by .the court. I held no stock as collateral, or as pledged to me, or for which I was in any way accountable.

*Int.* 4. What money have you received, directly or indirectly, from said company, or any person connected with it?

*Ans.* Previous to service of writ, none.

*Int.* 5. What personal property, rights, or credits, belonging to said company, have you had in your possession? When did you resign your office as president?

*Ans.* None previous to service of writ. I decline to answer last part of question.

*Int.* 6. What pecuniary consideration induced you to resign? State fully.

*Ans.* I decline to answer as wholly irrelevant. My previous question relates to the time prior to the service of this writ.

*Int.* 7. Was said company a corporation or a joint-stock company, or voluntary association of individuals?

*Ans.* I refer you to your own writ for an answer. I do not understand that such matters are relevant to this examination.

*Int.* 8. Who purchased the horses, teams, harnesses, wagons, and other property in this State, used by the New England Express Company? What part did you have in it?

*Ans.* I decline to answer upon any such irrelevant matters.

*Int.* 9. What had you to do with hiring the men and managing the business of the company, in this State, within the time inquired of? Who received the funds of the company? What part passed through your hands? What part remained in your hands for any purpose, from and at the time of said service? What amount did you realize for the stock you held in said company? To whom and when did you convey the same? What did it represent? Answer fully.

*Ans.* I have answered fully upon all the foregoing matters that are relevant. No money or property of any kind ever came into my hands, directly or indirectly, before service of this writ.

*Int.* 10. Did any money or other property come into the hands of any other person for you, from the sale of stock, or otherwise, within the time inquired of? What have you received, or what are you by agreement to receive as a consideration for your resigning your place as president?

*Ans.* As to first part of question I answer, No, so far as any money of the company, or any money paid by or in behalf of the company was concerned. As to the balance of the question I decline to answer, unless ordered by the court.

*Int.* 11. When did you resign your office as president?

*Ans.* That I decline to answer.

*Int.* 12. What money have you had in your hands growing out of the affairs of the New England Express Company, or its members, after its dissolution, at any time?

*Ans.* I decline to answer, except that I had none prior to service of this writ.

Upon the disclosure the trustee was charged for the full amount claimed in the writ; and the trustee alleged exceptions.

*A. A. Strout,* for the plaintiff.

*W. L. Putnam,* for the trustee.

BARROWS, J. The trustee excepts to a ruling, charging him as such, on what is styled in the exceptions a disclosure, but which

proves, on examination, to be a general denial of his liability as trustee, and a series of refusals to answer all questions respecting his business relations with the principal defendant, so as to enable the court to ascertain his true position.

He was a director, and, at one time, president of the defendant corporation. When asked to make a full statement of his connection (*i. e.* his business transactions) with it, he peremptorily declines to answer the question as irrelevant. It is but fair to infer from his subsequent refusals to answer that he never paid anything for his stock; that he was concerned in the purchase of the very property for which the debt to the plaintiff was incurred; that he received money for his stock; that that stock represented nothing but the property obtained on credit from the plaintiff and others; that he received money to resign his office as president; but when he resigned, or when or from whom he got his money for that or for his stock he refuses to answer, and falls back on his general denial that he ever owed the company anything, or that he ever had any money or property of theirs previous to the service of the writ.

It is manifest that these latter statements (which is all that he presents in the way of answer to the questions propounded) embrace his conclusions, or those of his counsel, as to matters of law; and that, as to all the facts from which it might be determined whether those conclusions are correctly drawn or not, the disclosure leaves the court entirely in the dark.

If such a disclosure can entitle the alleged trustee to a discharge, it may enable those connected with corporations, and · having the management of their affairs, to appropriate to themselves the property of others in a manner which savors strongly of absolute dishonesty; but it will not be consistent with the policy of our law regulating the process of foreign attachment. That policy is declared, in *Whitney* v. *Munroe*, 19 Maine, 42, to be "to render the effects and credits of the principal debtor, in the hands of the trustee, available for the benefit of the creditor. The law should receive a liberal construction in furtherance of this object."

It is no part of the duty of the court to direct the trustee what

questions to answer, and what he may safely decline to answer. If he declines, he assumes the risk of an inference that the truth would not be favorable to his position, and his claim to be discharged, and acts at his peril. *Smith* v. *Cahoon*, 37 Maine, 288.

If the interrogatory calls for facts which may be important in determining his true legal position towards the principal defendant, and in testing the correctness of his own legal conclusion, that he does not owe the principal defendant, or has nothing in his hands for which he is legally accountable to him, and he declines to state the facts, he cannot complain because an unfavorable inference is drawn.

His general denial is in the nature of a plea to be sustained by his answers, if the plaintiff propounds interrogatories giving him a full opportunity to disclose the true business relations between himself and the defendants; " otherwise," as *Cutting*, J., justly observes, in *Toothaker* v. *Allen*, 41 Maine, 325, " the trustee would be constituted the judge of the law as well as of matters of fact, with the exclusive privilege of drawing inferences and conclusions which more properly belongs to the court."

The trustee, who has had business transactions with the principal defendant, is not to shut his hand and his mouth and attempt to substitute his own legal inferences and conclusions for the facts which might enable the court to draw correct ones, if he expects to be discharged. To hold otherwise would be to enable men, in many cases, to defy a prosecution for perjury in a disclosure which might, notwithstanding, be essentially false, and to deprive creditors of all remedy, while they had in their pockets the fruits of transactions with principal defendants, which the court, upon a full disclosure, might deem legally attachable in this mode.

It is not impossible that this trustee might have truthfully answered the interrogatories here proposed, in a manner which would have entitled him to a discharge, but he has not seen fit to do so.

Upon *scire-facias* he may have the opportunity, by a statement of facts relative to his transactions with the defendant, to give the

court the means of determining whether his legal conclusion, as to his liability as trustee, was rightly drawn.

Until he does this he cannot complain that he stands charged.

*Exceptions overruled.*

APPLETON, C. J.; KENT, WALTON, DANFORTH, and TAPLEY, JJ., concurred.