OSTROW et al. v. McNEAL.

SAME v. FISHER.

Nos. 6820, 6821.

United States Court of Appeals for the District of Columbia.

Decided Sept. 13, 1937.

STEPHENS, Associate Justice, dissenting in part.

———◆———

Albert W. Jacobson, Alvin L. Newmyer, and David G. Bress, all of Washington, D. C., for appellants.

Thomas M. Baker, James A. O'Shea, John H. Burnett, Alfred Goldstein, and Joseph C. Turco, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

These are appeals by Edward C. Ostrow, Herbert Glassman, and General Finance, Inc., from judgments against them, as garnishees, entered in the District Court of the United States for the District of Columbia, upon their failure to answer certain interrogatories propounded to them by the appellees herein in an attachment after judgment.

Case No. 6820 was a damage suit brought in the District Court by one Olive McNeal against George D. Wharton and City Cab Company, a body corporate. Plaintiff claimed damages for personal injuries sustained by her by reason of the negligence of the defendants in operating their respective taxicabs on the streets of the city of Washington; she being a passenger in a cab of the City Cab Company when it collided with a cab of the defendant Wharton. The case was tried to a jury and a verdict of $5,000 was returned for the plaintiff. The verdict was reduced by a remittitur of $2,000, and judgment rendered thereon against both defendants for $3,000.

Case No. 6821 was likewise a damage suit for personal injuries, brought in the District Court by one Fisher against General Taxicab, Inc., a corporation. Plaintiff claimed damages for injuries sustained by him as a result of the negligent operation of one of defendant's taxicabs, which collided with plaintiff's automobile, whereby plaintiff was severely injured. The case was tried to a jury and a verdict of $2,500 was returned for the plaintiff. Motion for a new trial was denied, and judgment was entered on the verdict.

Thereafter, in the McNeal Case, a writ of attachment was issued and copies thereof, together with notices and interrogatories, were served upon the Lincoln National Bank and the Bank of Commerce & Savings.

The interrogatories propounded to these garnishees were as follows:

"1st. Were you at the time of the service of the writ of attachment, served herewith, or have you been, between the

time of such service and the filing of your answer to this interrogatory, indebted to the defendant? If so, how, and in what amount.

"2d. Had you, at the time of the service of the writ of attachment, served herewith, or have you had, between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of the defendant in your possession or charge? If so, what?

"3d. Had you, at the time of the service of the writ of attachment, served herewith, or have you had, between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of Herbert Glassman and/or Edward C. Ostrow, owners of the defendant City Cab Company, now known as Keystone Cab Co., Inc., in your possession or charge? If so, what?

"4th. Had you, at the time of the service of the writ of attachment, served herewith, or have you had, between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of Herbert Glassman and/or Edward C. Ostrow, individually or trading under the name of General Finance, Inc., or any other corporate or firm name or names in your possession or charge? If so, what?"

Each of the garnishees answered "No" to the first and second interrogatories. The Lincoln National Bank answered the third and fourth interrogatories as follows:

"[3d] There was when the writ was served, and still is, a checking account in this bank in the name of H. Glassman, whose full name is Herbert Glassman, amounting to the sum of $1968.46. This bank had not then, nor has not since had any goods, chattels or credits in the name of Edward C. Ostrow, and with the exception of said bank account in the name of "H. Glassman", no goods, chattels or credits in his name.

"[4th] No, as to Herbert Glassman and/or Edward C. Ostrow, individually. Answering as to the General Finance, Inc., there is no bank account in that name but there is a loan account in the name, General Finance, Inc. It appears from the records of the bank that Edward C. Ostrow is President and Herbert Glassman is Secretary-Treasurer.

"There is a bank account in the name of Superior Motors, Inc., in the sum of $1737.16 but the name of neither said

Glassman nor said Ostrow is necessary to be used to withdraw money therefrom but from certain transactions in connection therewith it appears to the undersigned affiant that said Glassman has an interest in the said corporation."

The Bank of Commerce & Savings answered the third and fourth interrogatories as follows:

"3rd. This garnishee has an account designated as Herbert Glassman, individually, and Edward C. Ostrow, individually, but so far as the information of this garnishee is concerned it has no knowledge as to whether or not they are the owners of the defendant, City Cab Company, now known as the Keystone Cab Company, Inc. The amounts on deposit to the individual names of Herbert Glassman and Edward C. Ostrow are set forth in the answer to the 4th interrogatory herewith.

"4th. This garnishee has an account on deposit in the name of Herbert Glassman, individually, in the amount of $584.63, and Edward C. Ostrow, individually, in the sum of $505.28. This garnishee also has an account in the name of General Finance, Inc., and withdrawals from the said account are required to be signed in its corprate name by Edward C. Ostrow, President, or Herbert Glassman, Secretary and Treasurer. This account shows a credit of $17,957.68. This garnishee has no other corporate or firm name or names other than as above indicated which bear the names of either Herbert Glassman or Edward C. Ostrow."

Thereupon Ostrow, Glassman, and General Finance, Inc., appeared specially and filed motions to quash the garnishments, in so far as interrogatories 3 and 4 are concerned, setting forth in supporting affidavits that they are not indebted to the plaintiff in any sum whatsoever, and that the funds in these banks, to their credit, belong to them absolutely, and that the plaintiff has no claim or judgment against such funds or against the affiants.

In opposition to these motions to quash, an affidavit was filed by Thomas M. Baker, attorney for the plaintiff, averring, upon information and belief, that the City Cab Company, General Finance, Inc., Superior Motor Cars, Inc., and City Cab Association, Inc., were owned entirely by Ostrow and Glassman, who manage, operate, and control said corporations; that the name of the City Cab Corporation, otherwise called "Company," was changed on June

7, 1934 to Keystone Cab Co., Inc., by Ostrow and Glassman; that with absolute ownership of all of the shares of stock of said concerns and interlocking control thereof, Ostrow and Glassman have, by the use of said corporate names, so manipulated their own affairs and those of the defendant City Cab Company, as to hinder, delay, and defraud creditors· thereof, including plaintiff herein, by secreting, hiding, or pocketing the assets formerly held in the name of and belonging to the defendant; that in effect the business of General Finance, Inc., is conducted as a copartnership affair, the funds thereof being subject to check at will by either of them, and that each of them has withdrawn upwards of $20,000 therefrom, over $50,000 ·in all, which was used in the business but no account thereof ever kept; that Ostrow conducts the business of General Finance, Inc., in this District, while Glassman conducts the "Sun Company" of Baltimore.

The allegations of said affidavit were in turn contradicted by counter affidavits filed by Ostrow, Glassman, and General Finance, Inc. The motions to quash the garnishments were denied.

Ostrow, Glassman, and General Finance, Inc., then filed verified pleas to the garnishments; the averments thereof being substantially the same as those contained in the affidavits accompanying their motions to quash. Plaintiff moved to strike the pleas, setting forth as grounds that Ostrow, Glassman and General Finance, Inc., were "not entitled to proceed by pleas to the garnishments herein, they not being strangers to this suit," and annexing to the motion an affidavit of the plaintiff herself, containing averments, upon information and belief, substantially the same as those appearing in Thomas M. Baker's affidavit in opposition to the motions to quash. The motion to strike was denied, whereupon plaintiff filed a replication, the allegations of which were in effect the same as those of Mr. Baker's affidavit in opposition to the motions to quash.

Thereafter, another writ of attachment was issued and served upon Ostrow, Glassman, and General Finance, Inc., with notice and interrogatories reading as follows:

"You are required to answer the following interrogatories, under oath, within ten days after service hereof. And should you neglect or refuse so to do, judgment may be entered against you for an amount sufficient to pay the plaintiff's claim, with interest and costs of suit.

"1st. Were you at the time of the service of the writ of attachment, served herewith, or have you been, between the time of such service and the filing of your answer to this interrogatory, indebted to the defendant? City Cab Company, also known as City Cab Corp., and as Keystone Cab Co., Inc.? If so, how, and in what amount?

"2d. Had you, at the time of the service of the writ of attachment, served herewith, or have you had, between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of the said defendant in your possession or charge? If so, what?"

To the first and second interrogatories each of the garnishees answered "No." The third interrogatories addressed to the garnishees are practically identical. That propounded to Ostrow reads as follows: "3d. Had you, at the time of the service of the writ of attachment served herewith, or have you had, between the time of such service and the filing of your answer to this interrogatory, any goods chattels money or credits, in your possession or charge or under your control or supervision, of Herbert Glassman and/or of yourself, individually, or acting as copartner or co-owner and/or trading under the corporate and/or trade name or names of defendant City Cab Company, also known as City Cab Corp., and as Keystone Cab Co., Inc., and/or City Cab Association, Inc., General Finance, Inc., General Taxicab, Inc., Superior Motor Cars, Inc., Sun Cab Company, and/or any other name or names whether corporate or not? If so, what?"

Each of the three garnishees answered the third interrogatory as follows: "Advised by Counsel that I [we] am [are] not required to answer this interrogatory."

Counsel for the plaintiff thereupon, after the expiration of the ten-day period prescribed by section 1089, D.C.Code 1901 (section 287, T. 24, D.C.Code, 1929), moved the court for judgment against the garnishees Ostrow, Glassman, and General Finance, Inc., by reason of their failure to answer interrogatories served upon them. The court denied this motion and allowed the garnishees five days within which to answer the interrogatories. No answers having been filed within the time set, the court entered a default judgment

against the garnishees in the amount of $3,000, together with interest and costs of suit. On the same date the court ordered the funds of Ostrow, Glassman and General Finance, Inc., which had been attached in the hands of the Bank of Commerce & Savings, condemned toward the satisfaction of the plaintiff's default judgment against Ostrow, Glassman, and General Finance, Inc.

In the Fisher Case, wherein General Taxicab, Inc., was defendant, a writ of attachment was also issued and served upon Ostrow, Glassman, and General Finance, Inc., together with interrogatories. The first and second interrogatories were the same as those filed in the McNeal Case, and as to each the garnishees answered "No." The third interrogatory propounded was in the same form as that in the McNeal Case. The third interrogatory addressed to Ostrow read as follows: "3d. Had you at the time of the service of the writ of attachment served herewith, or have you had between the times of such service and the filing of your answer to this interrogatory any goods, chattels, money or credits in your possession or charge or under your control or supervision of Edward C. Ostrow and/or Herbert Glassman individually and/or acting as co-partners or co-owners and/or trading under the corporate and/or trade name or names of the defendant General Taxicab Inc., a corporation, also known as Investment Taxicab Inc., and/or General Cab Association, Inc., and/or City Cab Company, a corporation also known as Keystone Cab Co., Inc. and/or City Cab Association Inc. and/or General Finance Inc., and/or Superior Motor Cars Inc., and/or Sun Cab Co., Inc. and/or any other name or names whether corporate or not. If so, what?"

To this interrogatory the garnishees made the same reply they made in the McNeal Case, viz., that they were advised by counsel that they were not required to answer it. Counsel for plaintiff Fisher thereupon moved the court for judgment against the garnishees for failure to answer interrogatories served upon them. The court denied the motion and allowed the garnishees five days additional within which to make answer. No answers having been filed within that time, the court entered a default judgment against the garnishees in that case in the amount of $2,500, together with interest and costs of suit.

From these judgments the garnishees have taken the present appeals.

Appellants urge that the lower court erred in entering the default judgments against them for failure to answer the third interrogatories, for the reason that said interrogatories were improper. Appellants' argument is that the interrogatories in question were improper because they did not concern any property "of the defendant" in the garnishees' possession or any indebtedness of the garnishees "to the defendant."

Section 1089 of the D.C.Code 1901 (Section 287, T. 24, D.C.Code, 1929) provides for interrogatories in cases of attachment as follows: "In all cases of attachment the plaintiff may exhibit interrogatories in writing, in such form as may be allowed by the rules or special order of the court, to be served upon any garnishee concerning any property of the defendant in his possession or charge or any indebtedness of his to the defendant at the time of the service of the attachment or between the time of such service and the filing of his answers to said interrogatories; and the garnishee shall file his answers, under oath, to such interrogatories within ten days after service of the same upon him. In addition to the answers to written interrogatories required of him, the garnishee may, on motion, be required to appear in court and be examined orally, under oath, touching any property or credits of the defendant in his hands."

Paragraph 4 of Law Rule 9 of the court below, promulgated in pursuance of section 1089, supra, provides: "*Interrogatories.*— The notice to the garnishee to answer interrogatories, and the interrogatories accompanying the same, shall be in the form set forth in the Appendix, or in substantially equivalent form. The plaintiff may also include such other interrogatories as may be proper."

In the appendix to said Law Rules, under the heading "Forms of Interrogatories," are set forth two forms which were followed almost verbatim in the first and second interrogatories in these cases. It is then stated: "And such other and additional interrogatories as may be proper to be propounded."

While it is true that the third interrogatories are somewhat clumsily framed, we do not think that they are so improper as to excuse appellants from an-

swering altogether. An examination of the interrogatories in question reveals that four interrogatories were incorporated into one; a practice of which we do not approve. The interrogator inquires as to chattels, money, or credits (1) of the garnishees individually; (2) of the garnishees acting as copartners or co-owners, trading under the corporate names of the judgment debtors; (3) of the garnishees acting as copartners or co-owners, trading under the corporate names of various other corporations; (4) of the garnishees acting as copartners or co-owners, trading under "any other name or names whether corporate or not."

We think the garnishees were excused from answering the above queries as to chattels, money, or credits of themselves individually; trading under the corporate names of corporations other than the judgment debtors; and trading under any other name or names, whether corporate or not. These questions were objectionable as going beyond the proper scope of inquiry as to possession of chattels, money, or credits of the judgment debtors, City Cab Company and General Taxicab, Inc.

The question, however, as to the possession of chattels, money, or credits of the garnishees, acting as copartners or co-owners, trading under the corporate names of the judgment debtors, was proper and was required to be answered by appellants. It appears to be the theory of the plaintiffs in these cases that the appellants, acting as copartners and co-owners, operate under the corporate names of the judgment debtors; in other words, that appellants are in fact the judgment debtors. The plaintiffs were entitled to inquire if that be a fact.

The third interrogatories were clearly separable. They were not improper in toto, and the appellants were required to answer the proper portion. If, instead of combining these four questions in a single interrogatory, the plaintiffs had propounded them separately, there can be no doubt that appellants would have been required to answer the question as to property in their possession, acting as copartners or co-owners, trading under the names of the judgment debtors, although they would have been excused from answering the remainder. A garnishee is not excused from answering a proper question, merely because it is inaptly combined with improper queries in a single interrogatory, where, as in this case, the proper question is clear and is easily separable from the remainder of the interrogatory.

Nor can we agree with appellants' contention that, solely by reason of their unequivocal answers to the first and second interrogatories, they were excused from answering the third. The plaintiffs were entitled to probe further, by means of proper questions, in order to ascertain whether the appellants were in fact in possession of chattels, money, or credits of the defendants, and whether appellants were in fact indebted to the defendants. Mansfield v. New England Exp. Co., 58 Me. 35, 39. The second portion of the third interrogatories, as we have stated above, was such a proper question.

The appellants having failed to make answer to the proper and separable portion of the third interrogatories within the time limited, and as further extended by the court, judgment was properly entered against them under section 1098 of the D.C.Code 1901 (section 295, T. 24, D.C. Code, 1929); the applicable provision of which is as follows: "And if the garnishee shall have failed to answer the interrogatories served on him, or to appear and show cause why a judgment of condemnation should not be entered, such judgment shall be entered against him for the whole amount of the plaintiff's judgment and costs, and execution shall be had thereon."

Appellants further contend that the judgment condemning the funds in the hands of the Bank of Commerce & Savings was improper, in view of that portion of Section 1098, supra, which reads as follows: "If a garnishee shall have admitted credits in his hands, in answer to interrogatories served upon him, or the same shall have been found upon an issue made as aforesaid, judgment shall be entered against him for the amount of credits admitted or found as aforesaid, not exceeding the amount of the plaintiff's judgment, and costs, and execution shall be had thereon not to exceed the credits in his hands."

Appellants argue that the garnishee Bank of Commerce & Savings "did not admit credits in its hands belonging to the defendant in the principal action," nor was the issue as to such credits determined as provided in sections 1094 to 1096 of the Code (D.C.Code 1929, T. 24, §§ 291, 293). In so far as the record discloses,

the issue made as to the credits in the hands of the garnishee bank was never determined. However, the answers of the bank disclosed deposits in the names of the appellants individually, and appellants, in their affidavits in support of their motions to quash the garnishment, as well as in their verified pleas, averred that said deposits belonged to them absolutely and to no one else. They cannot complain if the court takes their statements to be true and condemns such deposits to satisfy a default judgment rendered against them personally. Appellants appear to lose sight of the fact that these deposits were condemned as their property, to satisfy the default judgment against them, and not as the property of the judgment debtor.

The judgments are affirmed.

Mr. Justice VAN ORSDEL departed this life before this opinion was handed down.

STEPHENS, Associate Justice.

I concur in the conclusion of the majority that default judgment was properly entered against Ostrow, Glassman, and the General Finance, Inc., for failure to answer that part of Interrogatory No. 3 asking them whether they had in their possession as copartners or coowners trading under the name of the judgment debtor any chattels, money or credits of the judgment debtor.

I dissent from the conclusion of the majority that Ostrow, Glassman, and the General Finance, Inc., were not, because it did not ask for information concerning funds belonging to the judgment debtor, obliged to answer the balance of Interrogatory No. 3. The court had jurisdiction of the cause, i. e., it was a court competent to issue a garnishment interrogatory, and it had jurisdiction of the garnishees. Therefore, its interrogatory was valid in the fundamental jurisdictional sense and the garnishees could not with impunity disregard it even if it was erroneous, or improvident, or irrelevant in part. Their remedy as to such part was by direct attack, by motion to strike, and then, if necessary, by appeal from an adverse ruling on that motion. The majority conclusion in this aspect of the case, I think, countenances disobedience of a court process. See Locke v. United States (C.C.A.) 75 F.(2d) 157, certiorari denied 295 U.S. 733, 55 S.Ct. 644, 79 L.Ed. 1681, and cases therein cited.

"But if a court have jurisdiction to make an order it must be obeyed however wrong it may be. The principle is of universal force, that the order or judgment of a court having jurisdiction is to be obeyed, no matter how clearly it may be erroneous.' People v. Sturtevant, 9 N.Y. 263, 266, 59 Am.Dec. 536. Errors must be corrected by appeal and not by disobedience." Brougham v. Oceanic Steam Navigation Co. (C. C.A.) 205 F. 857, at 860.

I concur in the conclusion reached by the majority that Ostrow, Glassman, and the General Finance, Inc., cannot complain of the judgment of condemnation against their funds in the Bank of Commerce and Savings, but I do so upon the ground that according to the record, as I read it, no appeal was taken from that judgment.