**LOCKE v. UNITED STATES.\***

No. 7475.

Circuit Court of Appeals, Fifth Circuit.

Jan. 25, 1935.

---

\*Writ of certiorari denied 55 S. Ct. 644, 79 L. Ed. ——.

F. W. Fischer, of Tyler, Tex., for appellant.

L. R. Martineau, Jr., Sp. Asst. to Atty. Gen., S. D. Bennett, U. S. Atty., of Beaumont, Tex., and Chas. I. Francis, Sp. Asst. to Atty. Gen., for the United States.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The United States brought a bill in the District Court against N. S. Locke and others, praying a temporary and permanent injunction against their "producing from any of their wells petroleum in excess of the permissible daily production for each of such wells as determined by the orders of the Railroad Commission of Texas." It alleged that excessive production for several years had seriously affected the whole petroleum industry and diminished and disorganized interstate commerce in it; that a code of fair competition for the petroleum industry had been approved by the President under the National Industrial Recovery Act (48 Stat. 195), and pursuant to sections 3 and 4 of article 3 of the code a pro rata of production for the state of Texas had been recommended to the Texas Railroad Commission and accepted by it, and, after hearing, orders had been issued by the Commission restricting production from each well to 5 per cent. of its producing capacity as determined by the Commission; that the defendants, undeterred by penalties, were producing in excess of what was thus permitted; that others were complying with the restrictions but would in self-defense increase their production from the same pools if defendants continued their conduct; that the policies and laws of the United States in this regard would be brought into disrepute and thwarted, with irreparable loss and damage to the United States and the public in general; and that by far the greater part of this contraband oil was being and will be transported across state lines. After a hearing, in which the defendants moved to dismiss the bill on the grounds that the National Industrial Recovery Act and the petroleum code were beyond the national authority and an effort to regulate oil production within the state, that no national law was alleged to be violated, and that no right appeared for injunctive relief, the court made findings that the code and the act were prima facie valid, that the overproductions of the defendants were in violation of the code if it should finally be determined to be valid, that pending the determination of that question the defendants ought not in good conscience to be permitted to exceed their quotas to the injury of others who were complying, that the general welfare would be injured, and that on a balance of convenience to all concerned a temporary injunction ought to be granted under 28 USCA § 381; and therefore Locke and the other defendants were, pending the suit, enjoined in the language above quoted from the prayer of the petition. Locke was personally served with copy of the injunction and a notice of it was posted on his wells, but he continued to overproduce as before. An appeal from the order of injunction was allowed, but supersedeas was refused, and the appeal was not prosecuted. Locke was attached as for contempt. His only defense was that the injunction was void and the court without jurisdiction because the act of Congress and the code were beyond the power of national authority as urged in his motion to dismiss the bill. After hearing evidence and argument he was adjudged in contempt and ordered to be imprisoned for 90 days. This appeal is from that judgment. The errors assigned are that the court was without jurisdiction to entertain the bill or issue the injunction; that in ordering the defendants to obey the regulations of the Texas Commission the court exceeded its jurisdiction; and that the evidence did not show beyond a reasonable doubt that defendant had violated the injunction.

■ As to the last assignment, the right of fact review is narrow. Cf. Schwartz v. United States (C. C. A.) 217 F. 866. The evidence was that the injunction was granted January 11, 1934, a copy of it was served personally on Locke January 13th, and posted at the wells. On January 16th and 17th Locke arranged for a new man to operate the wells in place of one Ashton, who, like Locke, was a party to the injunction and had obeyed it. On January 18th, by special order of the judge, Locke was again served with a copy of the injunction. The wells continued to be operated as before. Locke made no denial or explanation of these facts. We think it plain that he was acting in willful and contemptuous disregard of the court's order.

■ If there is no jurisdiction whatever in the court to entertain the case, its temporary injunction like any other judgment is void. But if jurisdiction be only doubtful, the court has authority to look into that ques-

tion and decide it, and an injunction like this one which is made only to control the status pending the inquiry stands upon a special basis. The judge did not rest it on any provision of the petroleum code or the National Industrial Recovery Act, but expressly reserving a decision upon the validity of the code found it to be inequitable and disturbing to the public interests for the defendants to disobey while others were obeying it, and that the court under its general equity powers should prevent that wrong until the validity of the code should be settled. Whether the grant of the injunction was erroneous is not the question here. Error must be corrected by appeal, and cannot be tested by disobedience. Brougham v. Oceanic Steam Navigation Co. (C. C. A.) 205 F. 857; Schwartz v. United States (C. C. A.) 217 F. 866; O'Hearne v. United States, 62 App. D. C. 285, 66 F.(2d) 933. Willful disobedience of an injunction, however erroneous, issued by a court having jurisdiction while such injunction is in force unreversed constitutes contempt of court. Patton v. United States (C. C. A.) 288 F. 812. Under the Constitution, controversies to which the United States shall be a party, and cases arising under a law of the United States, are within the federal judicial power (article 3, § 2, cl. 1). By 28 USCA § 41 (1) jurisdiction of all suits of a civil nature at common law or in equity brought by the United States is vested in the District Court. In addition to this general grant of jurisdiction which would by itself entitle the District Court to entertain this suit brought by the United States and examine into its merits, section 3 (c) of title 1 of the National Industrial Recovery Act (15 USCA § 703 (c) provides: "The several district courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of any code of fair competition approved under this title [chapter]; and it shall be the duty of the several district attorneys of the United States, in their respective districts * * * to institute proceedings in equity to prevent and restrain such violations." Here is a special grant of jurisdiction over such cases arising under this law of the United States without limitation of amount involved and not excluding the United States as a complainant. Unless the whole code scheme of the National Industrial Recovery Act shall be found unconstitutional and void, this grant of jurisdiction stands and may be exercised for the purpose of inquiring whether the code scheme is unconstitutional, as well as whether a particular code is in force, and whether it does require or prohibit what it is claimed to do. In determining any of these questions, the court rightfully exercises jurisdiction even though the decision should be unfavorable to the suit. The grant of an injunction pendente lite to control the status is within the court's power irrespective of its correctness. Very pertinent are these words of the Supreme Court: "Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact. A complaint, setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court, and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven. Its decision either way upon either question is predicated upon the existence of jurisdiction, not upon the absence of it. Jurisdiction, as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous, or, in other words, is plainly without color of merit." Binderup v. Pathe Exchange, 263 U. S. at page 305, 44 S. Ct. 96, 98, 68 L. Ed. 308. Like expressions were used where the jurisdiction rested on the fact that the United States was the complainant in Erickson v. United States, 264 U. S. at page 249, 44 S. Ct. 310, 68 L. Ed. 661. "An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." Howat v. Kansas, 258 U. S. at page 189, 42 S. Ct. 277, 280, 66 L. Ed. 550. It cannot be maintained that the questions raised by this suit of the United States are too frivolous to make a case in court. They are important and novel. An act of Congress which assumes to regulate interstate commerce even by indirection is presumptively constitutional. That the Con-

gress may legislate as respects interstate commerce so as to supplement and aid state functions was held by us in Ryan et al. v. Amazon Petroleum Corp., 71 F.(2d) 1 and this holding was not affected by the reversal of the case on another point by the Supreme Court. Panama Refining Co. v. Ryan, 293 U. S. 388, 55 S. Ct. 241, 79 L. Ed. ——. It is true that in the argument of that case it was developed that a provision of the original petroleum code directly forbidding production in excess of quota had been dropped out prior to the filing of this bill. This was not known when the injunction was granted, but if it had been known there might still be a question whether the remaining provisions of the code would justify injunctive relief. We are of opinion that the court had jurisdiction over the case, and incidental power to issue a preliminary injunction to control the status pending its decision. Locke, not electing to review the injunctive order by appeal, was bound to obey it and was rightly held in contempt for his willful disregard of it.

Judgment affirmed.