### CARTER v. UNITED STATES.

#### No. 10386.

Circuit Court of Appeals, Fifth Circuit.

April 12, 1943.

On Rehearing May 18, 1943.

Bentley G. Byrnes and Bernard J. Fonseca, both of New Orleans, La., for appellant.

Francis H. Inge, U. S. Atty., of Mobile, Ala., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

This is a sequel to the case of Brown et al. v. George Coumanis et al., 5 Cir., 135 F.2d 163, this day decided, in which appellant Carter was a party. On the petition therein to enjoin Carter and others from interfering with the restaurant business of Coumanis by picketing and otherwise, a restraining order was granted on June 29, 1942, without notice, to continue five days pending a hearing, which commanded Carter and the others to cease and desist from unlawfully picketing Coumanis' place of business, unlawfully boycotting it by false statements, interfering with the employees and customers by false and insulting remarks, by threatening violence, and "Interfering with the delivery of food, beverages and merchandise used or to be used by complainant in the legal pursuit of the business." A copy of this order, and notice of the appointed hearing, was served by the Marshal on Carter. Several days previously he had, by interviews and by telegrams to the dealers in beer who supplied the restaurant, stopped deliveries of beer and even sales to Coumanis when he brought his own truck to get it. The telegrams read: "George's Cafe, Royal Street, declared unfair by waitress union. Don't deliver beer until controversy is settled." After the injunction was issued and served deliveries were resumed, and Carter telegraphed several dealers: "George's Cafe corner of Royal and St. Michael's Streets is still unfair to waitress organization, Local 991. Beer salesmen division is called into extraordinary session of its members tonight 7:30 P. M. As a representative of the organization I must ask you to remain in status quo basis until organization takes official action." One dealer telephoned Carter and asked if he could deliver beer to George's place, and Carter answered no. On July 2 Coumanis made a sworn application to the Court for a rule against Carter because of his contempt of the order, and a rule was issued returnable the next day. The United States then appeared by the District Attorney and by a writing headed United States of America v. Leo Carter, moved the Court to amend the proceedings for contempt by praying a punishment by fine payable to the United States and by confinement in jail. He also moved the Court to order the proceeding

transferred to the criminal side of the Court. The Court allowed the amendment and ordered the transfer, and the trial was continued to July 6. In leaving the courtroom another beer dealer asked Carter if he could now sell beer to Coumanis, and Carter answered no. On July 6, Carter filed a motion to dismiss the proceeding because the Court was without jurisdiction to issue the restraining order in that the complaint on which it issued did not involve interstate commerce, or diversity of citizenship, or a federal question. He also filed an answer denying an intent to violate the orders of the Court. A jury found Carter guilty, and he was sentenced to pay a fine of $1,000, and to be imprisoned in jail for six months. On this appeal no errors in the trial are assigned and argued. The specific things assigned as error are that the motion to dismiss was not sustained, and that the sentence has been imposed for disobeying a void order. We assume therefore that Carter has intentionally and contumaciously set at naught this restraining order, and will address ourselves solely to the question whether he can be punished for his contempt.

■ This was clearly a trial for criminal contempt. At the time of the trial the violated order had expired by its own terms, and there was no purpose to enforce it for the benefit of Coumanis. The United States stood formally as prosecutor, seeking to vindicate the dignity of the government, and not the civil rights of a litigant. The ultimate fate of the civil case is of no consequence at all, though it would be controlling in a case of civil contempt. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874. It was there said: "Proceedings for civil contempt are between the original parties, and are instituted and tried as a part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause." Page 445 of 221 U.S., page 499 of 31 S. Ct., 55 L.Ed. 797, 34 L.R.A.,N.S., 874. It was further said of criminal contempts: "If, upon the examination of the record, it should appear that the defendants were in fact and in law guilty of the contempt charged, there could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and au-

thority of courts to enforce orders and to punish acts of disobedience. For while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration, whose judgments and decrees would be only advisory. If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." Page 450 of 221 U.S., page 501 of 31 S.Ct., 55 L.Ed. 797, 34 L.R.A.,N.S., 874.

In the first Judiciary Act the courts of the United States were given power "to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same." 1 Stat. 83, § 17. In 1831, the power was limited to misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice, to misconduct of officers of court, and to disobedience of or resistance to lawful orders and commands of the court. 4 Stat. 487, § 1. These provisions of law are preserved in Section 268 of the Judicial Code, 28 U.S.C.A. § 385. The only form of contempt here presented is disobedience of and resistance to the temporary order of the court which forbade interference with the delivery of merchandise to be used in the business of Coumanis. The question posed is, was that "a lawful order or command"?

■ The appellant argues that no order or command is lawful which is issued by a court without jurisdiction; that while the district court adjudged it had jurisdiction, this court has adjudged it did not, so that all the orders and judgments it made are nullities, and no punishment can be inflicted for disobedience. Many cases are cited, especially Ex parte Rowland, 104 U. S. 604, 26 L.Ed. 861; Ex parte Fisk, 113 U. S. 713, 5 S.Ct. 724, 28 L.Ed. 1117; In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; and In re Sawyer, 124 U.S. 200, 8 S. Ct. 482, 31 L.Ed. 402. The first, Rowland's, was a mandamus against County Commissioners to compel them to levy and cause to be collected a tax to pay a judgment. They did levy it, but did not collect it for it was the tax collector's duty to collect it; and

for this reason, on habeas corpus, the Supreme Court held they could not be imprisoned for not doing what they were under no duty to do, the power of mandamus not extending so far. This case was really a use of habeas corpus jurisdiction to correct a wrongful final civil judgment, which was being enforced by imprisonment. That it was predominantly a case of civil contempt is shown by the provision of the sentence that satisfaction of the plaintiff's judgment should at once discharge the contemnors from imprisonment. In Ex parte Fisk, the defendant in a civil case refused to answer questions in an effort by the plaintiff to take his deposition. The court fined him and put him in jail till the fine should be paid. The Supreme Court held there was no law to compel the defendant to give testimony by such deposition, and ordered his release, habeas corpus being used because there was then no appeal from a contempt order, as the Supreme Court said. In Ayers case, the federal Circuit Court was asked to enjoin the Attorney General of Virginia from filing suits to recover the State's taxes. The Court enjoined; the Attorney General nevertheless filed the suits; and the Court attached him. He was sentenced to pay a nominal fine and be imprisoned until he dismissed the suits. On habeas corpus because no appeal lay, the Supreme Court held that the proceedings were really against the State of Virginia, contrary to the Eleventh Amendment of the Constitution, and were therefore without federal jurisdiction, and ordered release. The contempt proceeding was clearly a civil one, and the order held to be unlawful was a direct violation of the Constitution. Sawyer's case also was against public officers acting under State law, enjoined by a federal court from performing their lawful functions, and imprisoned for continuing to act. On habeas corpus the Supreme Court held the subject matter was not within equity jurisdiction and the injunction was void, and ordered discharge. The Chief Justice and Justice Harlan, quite correctly it seems to us, dissented because the temporary injunction, though improvident, was not void, and ought to have been obeyed while in force. These cases all speak of the judgments as void for want of jurisdiction and as not able to support a charge of contempt for disobedience; but there are many kinds of jurisdiction—of the person, over the place, in equity, as a federal court. It cannot now be broadly asserted that a judgment is always a nullity if jurisdiction of some sort or other is wanting. It is now held that, except in case of plain usurpation, a court has jurisdiction to determine its own jurisdiction, and if it be contested and on due hearing it is upheld, the decision unreversed binds the parties as a thing adjudged. Treines v. Sunshine Mining Co., 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85; Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 403, 60 S.Ct. 907, 84 L.Ed. 1263; Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104. So in the matter of federal jurisdiction, which is often a close question, the federal court may either have to determine the facts, as in contested citizenship, or the law, as whether the case alleged arises under a law of the United States. See Binderup v. Pathe Exchange, 263 U.S. 291, at page 305, 44 S.Ct. 96, 68 L.Ed. 308. A federal question substantial enough to give jurisdiction when first raised, may after decision by the Supreme Court become in later cases a frivolous question, insufficient again to serve. Jurisdiction vel non, as finally established, is not a safe or clear guide in all cases of contempt. Thus United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 166, 51 L.Ed. 319, 8 Ann.Cas. 265, was a case of criminal contempt arising from the killing of a man in custody while his case was on appeal to the Supreme Court, that court having ordered "that all proceedings against the appellant be stayed, and the custody of said appellant be retained pending this appeal", the question being whether the courts of the United States had any jurisdiction over appellant's case. The lower court had declined jurisdiction, so the question was not whether the appellate court had jurisdiction to reverse a wrongful assumption of jurisdiction, but whether it could assert federal jurisdiction for the first time. Justice Holmes said for a unanimous court: "It has been held, it is true, that orders made by a court having no jurisdiction to make them may be disregarded without liability to process for contempt [citing the cases above discussed]. But even if the circuit court had no jurisdiction to entertain Johnson's petition, and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. It and it alone necessarily had jurisdiction to decide whether the case was properly before it. On that question, at least, it was its duty to permit argument, and to

take the time required for such consideration as it might need. * * * Until its judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition." Page 573 of 203 U.S., page 166 of 27 S.Ct., 51 L.Ed. 319, 8 Ann.Cas. 265. Such orders are not unlawful but lawful orders. The quoted words apply literally to the district court in this case. It had a new question of jurisdiction to solve. It alone had authority in the first instance to decide whether or not the case arose under the Norris-La Guardia Act, 29 U.S.C.A. §§ 101–115, a law of the United States. It could lawfully by a temporary injunction preserve the business which was the subject of the litigation until a hearing could be had. The order was not final. It deprived Carter of no right. It only required that he refrain from interfering with another man for a few days. Carter did not elect to move to dissolve the order, but to flout and disobey it. The order was, while it lasted, a lawful one, such as a district court of the United States in the exercise of its equity powers could make, pending a hearing of a doubtful question of jurisdiction. The question of jurisdiction was not frivolous. It had never before been decided. The Norris-La Guardia Act does qualify its denials of jurisdiction with such exceptions as make possible a rational implication that in the excepted cases jurisdiction is granted. In its second section it does declare a policy that an employee should be free to decline to associate with his fellows, and should be free to designate his own representatives in bargaining, to which end the following "definitions of and limitations on" court authority are made. One of the things defined as not to be restrained is, Section 4(e), "patrolling * * * not involving fraud or violence", with a possible implication that patrolling which does involve fraud or violence might in all cases be restrained. The district court concluded it had jurisdiction, and if appeal had not been taken, Carter as a party would probably have been bound by the judgment. We have reversed that conclusion, but we think the restraining order made to preserve the subject of litigation, to-wit, Coumanis' business, pending a hearing, was not by the reversal rendered unlawful or void. The United States may punish wilful disobedience of it. We have sustained a similar temporary order as a basis for punitive contempt proceedings, though the law under which the suit was alleged to arise proved to be unconstitutional, in Locke v. United States, 5 Cir., 75 F.2d 157. See also Howat v. Kansas, 258 U.S. 181, 42 S.Ct. 277, 66 L.Ed. 550.

It is lastly urged that the restraining order was unlawful because the petition did not allege, and it was not found as a fact, that the public officers charged with the duty to protect Coumanis' property were unable or unwilling to furnish adequate protection, as required by 29 U.S.C.A. § 107(e). This is not a case where physical damage to property was done or threatened, and the sub-section referred to has no application. But if it does apply, so does the proviso which follows, allowing a temporary restraining order without notice on a showing and a finding of substantial and irreparable injury unavoidably imminent. This allegation and fact finding was had.

The judgment is affirmed.

HUTCHESON, Circuit Judge (dissenting).

I agree with my associates that the trial from which this appeal comes was one for criminal contempt, McCann v. New York Stock Exchange, 2 Cir., 80 F.2d 211. I agree, too, that "Since a prosecution for a criminal contempt is between the public and the defendant therein, such prosecution is not a part of the cause out of which the contempt arose", Russell v. United States, 8 Cir., 86 F.2d 389, 392, and, therefore, that "The ultimate fate of the civil case is of no consequence at all, though it would be controlling in a case of civil contempt". I agree with them, too, that even where the federal court is without jurisdiction of a particular cause for want of the requisites giving the federal court jurisdiction, if it has in fact asserted jurisdiction, acts of interference with the subject matter of the suit or with property in custody of the court may be punished as acts in contempt of the court as a court. O'Malley v. United States, 8 Cir., 128 F.2d 676; Converse v. Highway Const. Co., 6 Cir., 107 F.2d 127, 127 A.L.R. 860; Cramer v. Lamb, 5 Cir., 48 F.2d 537; Lamb v. Cramer, 285 U.S. 217, 52 S.Ct. 315, 76 L.Ed. 715; and that this is so even where the court did not have the jurisdiction it assumed to exercise, United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.

Ed. 319, 8 Ann.Cas. 265. I even agree with them that the law ought to be as they have written it that one who, as Carter did here, deliberately defies a temporary order of the court, which does not purport to interfere with his person or his property, as this order did not, ought not to have the right to defend a criminal contempt brought for his disobedience by asserting that the order he disobeyed was void for want of authority of the court to make it, and that the court was, therefore, without authority to punish him for contempt for disobeying. But I think it clear that the law as set down both in the statute and in the decisions is to the contrary. First, as to the statute, 28 U.S.C.A. § 385. Declaring the power of the courts to punish contempts of their authority, the statute proceeds to limit that power thus, "Such power to punish contempts shall not be construed to extend to any cases except * * * and the disobedience * * * by any party * * * or other person to any *lawful* writ, process, order, rule, decree, or command of the said courts." (Emphasis supplied.) And next to the authorities. Gathered in a note to Sec. 385, Title 28, beginning at page 336 and again at page 124 of the pocket part are numerous authorities all pronouncing, without "variableness, neither shadow of turning", that if the injunction was "for any reason totally invalid," no person is required to obey it and "no violation or disregard of it could constitute a punishable contempt", and that persons held under judgments of contempt or disobedience to such void orders will be released on habeas corpus. That this is the law, I think, the majority does not deny. The view it takes is that the order was not void because though the court did not have jurisdiction of the cause, it had jurisdiction to determine whether it did or did not have such jurisdiction, and while it was considering that question and until it determined that it did not, all its orders must be obeyed. The mere statement of this proposition as applied to this case, I think, carries its own refutation, for here the judge having already made up his mind and declared when he issued the temporary injunction that he had jurisdiction, continued to be of that mind in issuing a permanent injunction in identical terms.

I understand my associates would concede, if the disobedience here charged had been of the permanent injunction, that the conviction could not stand. I cannot see that the fact that the order disobeyed was a temporary one at all changes the picture. For the temporary injunction was not an order merely preserving the subject matter from destruction or even preserving the status quo, while the court was determining its jurisdiction. It was a sweeping mandate based on an affirmation that jurisdiction existed, disrupting everything that had gone before, completely demolishing the status quo and taking under complete surveillance all of the activities which were the subject of the civil suit.[1]

---

[1] "And the Court having jurisdiction in the premises:

"Now, Therefore, Be It Ordered, Adjudged and Decreed by the Court that Harry Brown, Thelma Metcalf, Leo Carter, Frank J. Cappallo and Floyd Starkey, as individuals and as agents or representatives of the aforesaid Union, and the Hotel and Restaurant Employees International Alliance and Bartenders' International League of America, Local No. 563, an unincorporated association of Mobile County, Alabama, and to all known persons whose unlawful acts have been complained of, be, and the same are ordered to forthwith cease and desist from:

"1. Unlawfully picketing complainants' place of business.

"2. Unlawfully boycotting, by disseminating false and fraudulent statements in writing and by word of mouth, complainants' place of business.

"3. Unlawfully disseminating false and fraudulent statements in writing and by word of mouth, concerning complainants'

place of business, and the working conditions of complainants' employees.

"4. Interfering with the delivery of food, beverage and merchandise used or to be used by complainants in the legal pursuit of their business.

"5. Interfering with complainants' personnel and complainants' customers by false, fraudulent or insulting remarks.

"6. Threatening to use strong measures or commit acts of violence against complainants, their agents, servants or employees.

"It is Further Ordered, Adjudged and Decreed that this temporary injunction shall be void, after the expiration of five days; and this cause shall be heard on its merits at 10 A. M., July 6, 1942.

"It is Further Ordered, as a condition to the issuance of this said temporary restraining order, that complainants shall file an undertaking in an amount which the Court fixes at $250.00, to recompense those herein enjoined for any loss, expense or damage caused by the improvi-

The final order, identical in words and figures with the temporary order, merely made it permanent. To treat such an order, as the majority do, as one, like that in Shipp's case, merely preserving the subject matter and the telegram of Carter, which in terms sought merely to preserve the "status quo", as a similar act to the murder of the defendant in Shipp's case, is, I think, without warrant either in the authorities or in the principles which underlie them. While, therefore, I deplore the act of Carter in taking the law into his own hands, as I have deplored violent acts in disobedience of an injunction when the violators were on the other side of the docket, Brotherhood of Ry. & S. S. Clerks, etc., v. Tex. & N. O. R. Co., D.C., 24 F.2d 426, at pages 431 and 432, I cannot subscribe to the view of the majority that in acting as he did, Carter violated a lawful order of the court and, therefore, could be found guilty of the offense for which he was convicted. As to Locke v. United States, 5 Cir., 75 F.2d 157, which the majority cites, I sat, and helped to reach the opinion, in that case. With deference, that case has no points of similarity to this one, for there the United States had a right to sue in its own courts, the court had jurisdiction of the suit, its judgment in issuing the injunctive order was not void, but merely erroneous. It is the law that in order to warrant jurisdiction in a federal court, allegations of a bill should be specific and should clearly show federal jurisdiction, Abbott v. Eastern Massachusetts St. Ry. Co., 1 Cir., 19 F.2d 463. We have decided in the Brown case, opinion this day handed down, that the bill here contained not a single allegation which would confer jurisdiction. I firmly believe that no good citizen ought to take it upon himself to disobey orders of a court on the ground alone that they have been issued without authority, but should obey them until properly set aside unless, indeed, the void orders deprive him of his liberty or his property. I deplore the action of Car-

ter in this case in setting himself up as the judge of the validity of the court's order. But I cannot concur in the judgment of affirmance, because I believe it runs counter to the law as it has been and is written. I respectfully dissent.

On Motion for Rehearing.

PER CURIAM.

█ The motion for rehearing urges that the judgment appealed from is unlawful in that it imposes a fine of $1,000 and imprisonment for six months, although the statute authorizing punishment for contempts, Judicial Code § 268, 28 U.S.C.A. § 385, permits only fine or imprisonment. This was not made a ground of appeal, nor was it assigned as error. It is, however, of so fundamental a character as to demand our attention. We accordingly grant a rehearing on this point, and having had briefs from both parties, on the authority of In re Bradley, 63 S.Ct. 470, 87 L.Ed. ——, decided Feb. 1, 1943, we hold the sentence to be erroneous. It is true that the evidence discloses more than one act of contempt, and if two acts had been separately prosecuted and guilt found as to each, one of them might have been punished by fine and one by imprisonment. Hoffman v. United States, 7 Cir., 13 F.2d 278. But here there was only one general charge of contempt, one verdict of guilt, and one judgment.

It is further urged in Carter's brief that the fine has been paid, and that appellant is entitled to be discharged under the Bradley case. It does not appear from the record on appeal that the fine has been paid, so we have no occasion to decide the effect of a payment.

The judgment of affirmance hitherto rendered is set aside, and for the error above pointed out the judgment appealed from is reversed, and the cause is remanded to the District Court for such further proceedings as are lawful.

---

dent or erroneous issuance of this order, including all reasonable costs, together with a reasonable attorney's fee and expense of defense against the order or

against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the Court."