NORMAN BRIDGE DRUG COMPANY, Plaintiff-Appellee,

v.

Michael BANNER, John R. Bartels, Jr., Administrator, Drug Enforcement Administration, et al., Defendants-Appellants.

Nos. 74–3877 and 75–1962.

United States Court of Appeals, Fifth Circuit.

April 5, 1976.
Rehearing Denied May 24, 1976.

Ira DeMent, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., Allan P. MacKinnon, Atty., Crim. Div., Dept. of Justice, Washington, D. C., for defendants-appellants.

Richard A. Ball, Jr., Montgomery, Ala., for plaintiff-appellee.

Before WISDOM, COLEMAN and GEE, Circuit Judges.

COLEMAN, Circuit Judge.

These consolidated appeals present two facets of the same controversy, both engendered by the unsuccessful efforts of the Drug Enforcement Administration, by administrative order and without a breath of prior notice, to suspend *instanter* the registration of a corporately owned drug store to dispense controlled drugs. The suspension was attempted on November 11, 1974, on the ground, *inter alia*, that the president of the corporation, himself a registered pharmacist and in active charge of the store, had pleaded guilty six months previously (May 3, 1974) to one count of a federal indictment charging him with unlawfully dispensing controlled substances, for which he was fined and served a brief time in prison. He was back in the store before November 11.

In this connection it is to be remembered that under 21 U.S.C. 824(d) such a suspension (simultaneously with the institution of proceedings to revoke) may be had only when the Attorney General finds "that there is an imminent danger to the public health or safety" and that a "suspension under this subsection shall continue in effect until the conclusion of such proceedings [to revoke], including judicial review thereof, unless sooner withdrawn by the Attorney General or dissolved by a court of competent jurisdiction".

The plain language of this section means that one faced with becoming the victim of the harsh expedient of suspension without prior notice may resort to

824

the appropriate district court in search of appropriate relief.

The second facet of the case is concerned with the seizure of controlled drugs on hand when the drug enforcement agents made their unheralded entry into the drugstore on November 11, 1974, announcing the suspension and proceeding in the presence of the customers and store employees to box up all controlled substances. More especially, the case is concerned with the fact that these agents, charged with the enforcement of the law, for an entire week steadfastly declined to obey a temporary restraining order of the United States District Court, in which they were directed to return the drugs. Indeed, the return was not made until after a panel of this Court, on November 18, had declined to dissolve or stay the temporary restraining order. We are thus confronted with the odd spectacle of persons charged with the enforcement of the law refusing, themselves, to obey a specific court order.

Number 74–3877 is an appeal from a preliminary injunction against the revocation and seizure. This phase of the case has been mooted by appropriate post-injunction administrative proceedings.

Number 75–1962 is an appeal from a judgment holding the appellants in *civil* contempt of court for failing to obey the temporary restraining order, for which appellants were assessed a civil fine of $500.

The judgment in 74–3877 will be vacated for mootness.

The judgment in 75–1962 is affirmed.

### Facts

On November 11, 1974, the Drug Enforcement Administration ordered the Norman Bridge Drug Company to show good cause within thirty days why its application to renew its license to dispense controlled substances should not be denied and why its present license should not be revoked. Additionally, the DEA simultaneously suspended Norman Bridge's license pending the outcome of the show cause proceedings.

To support its finding of imminent public danger, the DEA cited the following:

(1) That Norman Bridge Drug Company's president, Roy Vann, had been convicted on May 3, 1974, of unlawfully dispensing controlled substances;

(2) That Norman Bridge Drug Company had failed to take an initial inventory of all controlled substances in its possession on May 1, 1971, in violation of 21 CFR 1304.12;

(3) That Norman Bridge Drug Company had failed to take a biennial inventory on May 1, 1973, as required by 21 CFR 1304.13;

(4) That Norman Bridge Drug Company had failed to maintain records of receipts and records of prescriptions of controlled substances in a readily retrievable manner, in violation of 21 CFR 1304.04(d)(1);

(5) That Norman Bridge Drug Company had filled prescriptions which had been issued in a manner violative of 21 CFR 1306.05(a);

(6) That Norman Bridge Drug Company had failed to keep complete and accurate records of receipts of controlled substances in Schedules III, IV and V in that it did not record the date of receipt on its invoices, in violation of 21 CFR 1304.21(a);

(7) That Norman Bridge Drug Company had refilled prescriptions for controlled substances in Schedules III and IV more than five times, in violation of 21 CFR 1306.22;

(8) That Norman Bridge Drug Company had failed, as purchaser of controlled substances in Schedule II, to record on DEA Order Forms the amounts of controlled substances received and the dates of receipt thereof, in violation of 21 CFR 1305.09(e);

(9) That an accountability audit of the controlled substances stock and the records of transactions involving controlled substances at Norman Bridge Drug Company revealed large and ex-

cessive overages and shortages which were not adequately explained to the Drug Enforcement Administration.

Upon serving notice of these Administration decisions, DEA agent Michael Bannon (incorrectly cited in the case style as "Banner") proceeded with the seizure of Norman Bridge's controlled substance inventory.

At about 12:30 p. m. that same day, November 11, 1974, Norman Bridge's attorneys informed Bannon they intended to seek a temporary restraining order requiring him to relinquish possession of the drugs. About 2:30 p. m. a copy of Norman Bridge's complaint was served on Bannon; also on the United States Attorney, who represented the DEA throughout. The complaint named as defendants agent Bannon (Banner), DEA Administrator John R. Bartels, the DEA, and unknown parties.

At 5:30 p. m., District Judge Varner telephoned the U. S. Attorney to inform him that the complaint had been filed, and that the Judge was inclined to issue the requested temporary restraining order on the next day. That evening, the U. S. Attorney and counsel for the drug company had a further discussion of the matter, but agent Bannon transported the drugs from Montgomery, Alabama, to Birmingham, in another federal judicial district.

On November 12, 1974, at 10:30 a. m., the District Judge issued the temporary restraining order, as he had indicated he would do. He ordered a halt to enforcement of the suspension, an end to the inventory seizure, and the return of drugs already seized.

Acting on the advice of the U. S. Attorney and of Robert Hollinshead, Chief of Compliance of the Regional Drug Enforcement Administration, agent Bannon refused to return the drugs to Norman Bridge.

By its own terms, the temporary restraining order was to expire at 9:00 a. m., November 21, 1974, at which time a hearing was to be held to determine the propriety of a preliminary injunction.

On November 13 the DEA had not complied with the court order. Norman Bridge filed a motion to force the DEA to show cause why it should not be held in contempt of court. On the same day, acting in behalf of the defendants, the United States Attorney filed a motion in the District Court to stay or dissolve the temporary restraining order. The motion alleged that (1) the complaint failed to show irreparable injury in the absence of a temporary restraining order; (2) the complaint did not evince a substantial likelihood that the drug company would prevail on the merits; and (3) public health and safety would be jeopardized if the temporary restraining order were not dissolved.

The motion to dissolve was denied by the District Court. It was thereafter denied by a panel of this Court on November 18.

On November 18, 1974, the District Court ordered defendants to show cause why they should not be held in contempt. The contempt hearing was set for November 21, 1974, along with the hearing on the preliminary injunction.

In response to this show cause order, defendants stated that their motion for a stay had been denied by the Fifth Circuit and that they were returning the drugs to Norman Bridge. In view of this belated compliance, they asked that the contempt show cause order be dissolved.

Additionally, defendants said they had not complied immediately because they found irregularities in the issuance of the temporary restraining order. The complaint had failed to state a basis for a federal jurisdiction (but the basis appears on the face of the statute). Furthermore, the complaint had not complied with the requirements of Rule 65(b), Federal Rules of Civil Procedure, for issuance of temporary restraining orders without notice to the adverse party. (This objection was frivolous because the United States Attorney and the DEA had abundant actual notice). The complaint also had failed to enumerate facts showing irreparable injury would be in-

curred in the absence of the temporary restraining order, nor had it presented any theory likely to prevail on the merits of the case. (This, of course, should have been raised by a motion to dissolve rather than by disobeying the order).

Nevertheless, on November 21, 1974, as provided in the temporary restraining order, a hearing was held to determine the propriety of both a preliminary injunction and of a contempt citation against the defendants. The District Court did not reach the contempt issue on that occasion; it was continued until February, 1975, but a preliminary injunction was issued.

In the hearing of November 21, the DEA stood on the findings of the Attorney General and the president of Norman Bridge; Roy Vann (previously convicted), was the only witness. On April 10, 1974, the DEA had inspected Norman Bridge and noted the clerical irregularities cited earlier. Additionally, Vann had been convicted on May 3, 1974, for violating 21 U.S.C. § 841(a)(1), unlawfully dispensing controlled substances. However, Vann had stopped personally filling prescriptions after June, 1974, and almost seven months had elapsed before the DEA decided in November, 1974, that drug dispensations at Norman Bridge posed an imminent danger to public health, justifying suspension without notice of its license to dispense controlled substances.

Vann's testimony was to the following effect: when the suspension was imposed, agent Bannon and other agents entered Norman Bridge in the middle of a business day and began packing up the controlled substances inventory. As the agents worked, customers entered the store freely, witnessing the seizure. Vann called his attorney who drafted a complaint for a temporary restraining order; and before Bannon had left the store with the seized drugs, he was served with a copy of the complaint. Nevertheless, Bannon removed the drugs and did not return them until November 19, 1974. Of course, many customers had to go elsewhere for their prescriptions during this period. Vann doubted that many would ever return to Norman Bridge.

The United States Attorney, representing the defendants, offered no evidence at the hearing. Instead, he argued that the temporary restraining order was improvidently granted and that the DEA's finding of imminent danger should not be tampered with.

The District Court was satisfied that a preliminary injunction was justified. It found: (1) that Norman Bridge would incur irreparable loss unless a preliminary injunction was entered; (2) that the facts enumerated by witness Vann disclosed a reasonable probability that Norman Bridge would prevail in their show cause hearings before the DEA; (3) that the record keeping inconsistencies cited in the DEA's suspension order were not grounds for revocation; (4) that in light of the seven month delay by the DEA in acting on the record keeping violations and the criminal conviction of Roy Vann, there had been no showing of imminent danger to the public; and (5) that the DEA had abused its discretion. Compare *Morgan v. Fletcher,* 5 Cir. 1975, 518 F.2d 236, 239 with *Associated Securities Corp. v. SEC,* 10 Cir. 1960, 283 F.2d 773. Accordingly, an injunction was entered preliminary to the revocation hearing. The contempt issue was continued until a later date.

On December 10, 1974, Norman Bridge filed another motion for an order requiring defendants to show cause why they should not be held in contempt. The drug company alleged that the DEA's noncompliance from November 12 until November 19 had caused it to incur court costs and attorney's fees, and it asked that the defendants be compelled to reimburse them.

The contempt proceeding was heard in February, 1975, before Judge Frank Johnson. Judge Johnson's findings and conclusions were dictated February 13. A copy of Judge Johnson's findings and conclusions will be appended to this Opinion.

■ A three day hearing in this matter was held before Administrative Law Judge Francis L. Young in Montgomery, Alabama, on July 15, 16, and 17, 1975. Three witnesses testified for the government and five for Norman Bridge. Forty three exhibits were introduced. The Administrative Law Judge issued a 45 page opinion. He held that Norman Bridge's registration could be revoked, and not renewed, because of Vann's conviction. He found, of course, that Mr. Vann had pleaded guilty to a controlled substances violation, that no instances of intentionally falsified or fraudulent record keeping were found at the Norman Bridge Pharmacy in the audit of April, 1974; that since that date many changes and vast improvements had been made with respect to such records. He further held that the government had not demonstrated by a preponderance of the evidence in the record considered as a whole that it is necessary to deny, revoke or suspend the DEA registration of Norman Bridge to prevent future diversion of controlled substances. He recommended that the Acting Administrator of the Drug Enforcement Administration neither suspend nor revoke the DEA registration of Norman Bridge and that its registration be renewed, although he recognized that because of Vann's conviction the Administrator could lawfully do both.

As we have seen in several recent cases, the Administrator did not accept the recommendations of the Administrative Law Judge. He revoked and denied renewal, with the proviso that after six months an application for registration would be considered following a conference with Vann's probation officer.

In any event, this settles the subject matter, and the results, involved in the issuance of the preliminary injunction. That aspect of the case is moot.

### General Concepts of Contempt

When the duly issued orders of a court, in the exercise of its jurisdiction, are disobeyed, the recalcitrant may be cited, according to the circumstances, for criminal contempt or civil contempt or both. The sanction to be imposed is dictated by the purposes to be served. If the purpose is to punish defiance of judicial authority, criminal contempt is involved. The beneficiaries there are the courts and the public interest.

■ Even when a court issues an order which it had not the power or authority to issue, in matters of criminal contempt the disobedient party may be held and appropriately punished. This is true if the order is later found to have been invalid, even to the extent of infringing constitutional rights, *Maness v. Meyers,* 1975, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574; *United States v. Dickinson,* 5 Cir. 1972, 465 F.2d 496, on remand, D.C., 349 F.Supp. 227, affirmed on second appeal, 5 Cir., 476 F.2d 373, cert. denied, 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed.2d 223.

■ On the other hand, where the purpose is to *compel* obedience of the court order or to compensate the litigant for injuries sustained from the disobedience, civil contempt is proper. In civil cases, the beneficiary of civil contempt is the individual litigant. See, e. g., *Gompers v. Bucks Stove and Range Company,* 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797; *Salvage Process Corporation v. Acme Tank Cleaning Process Corporation,* 2 Cir. 1936, 86 F.2d 727; *Rivers v. Miller,* 5 Cir., 1940, 112 F.2d 439; *Nelson v. Steiner,* 7 Cir. 1960, 279 F.2d 944; *Southern Ry. Co. v. Lanham,* 5 Cir. 1968, 403 F.2d 119.

■ Civil contempt divides into two general classes: coercive and compensatory. Both classes benefit the injured litigant, but in different ways. Coercive civil contempt is intended to make the recalcitrant party comply. Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance. This includes losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance.

In *Worden v. Searls,* 1887, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853, the plaintiff

manufactured buggy whip holders and allegedly held a patent for the process, a patent upon which defendant allegedly infringed. The trial court enjoined defendant from infringing and fined him for civil contempt when he failed to comply. The Supreme Court reversed, finding plaintiff's patent invalid and negating the contempt fine. Plaintiff's right to his compensatory contempt fine was contingent upon the outcome of the *main cause,* the patent infringement issue. When that was resolved unfavorably, plaintiff lost his right to compensation.

■ A party held only in civil contempt by way of compensation to his adversary will be absolved of liability if the court order was invalid or erroneous. The adversary should realize no gain from orders to which he was not entitled. *E. g., United States v. UMW,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Worden v. Searls, supra; Carter v. United States,* 5 Cir. 1943, 135 F.2d 858; *Salvage Process Corp. v. Acme Tank Cleaning Process Corp.,* 2 Cir. 1936, 86 F.2d 727.

The civil contempt in this case was not coercive. It was compensatory. The District Court ordered that when the $500 joint fine was collected by the Clerk it should be disbursed to Norman Bridge Company.

### Was the Temporary Restraining Order Invalid?

The conviction for civil contempt and the consequent fine stem from only one aspect of the case, the failure to return the drugs to Norman Bridge after being ordered to do so. Was the order to return invalid? For the reasons hereinafter set forth, we think not.

The temporary restraining order, entered November 12, 1974, by District Judge Varner, recited that the Judge had consulted with the office of the United States Attorney, that if the restraining order were not issued the plaintiff would suffer immediate and irreparable injury, and that there had been no showing by the Drug Enforce-ment Administration or its agents of imminent danger to the health or safety of the public within the meaning of 21 U.S.C. § 824. Appellants were restrained from the immediate suspension of the DEA registration of Norman Bridge, from taking into their possession any controlled substances belonging to the plaintiff, and were further ordered to return any such property already taken. The temporary restraining order would expire on November 21, 1974, at which time a hearing would be held at the federal courthouse in Montgomery.

The appellants want the validity of the temporary restraining order to be weighed by the stereotyped rules usually applicable to such cases. They say that they were justified in refusing to obey the temporary restraining order because its issuance did not comply with the usual procedures and did not comport with the usual standards.

■ The appellants fail to notice that what we have in this case is a *statutory scheme specifically mandated by Congress.* Apparently in an effort to preserve constitutional safeguards with reference to the seizure of property or the deprivation of professional status without notice, Congress was careful to prescribe two requirements for the suspension of registration and the seizure of property without notice, 21 U.S.C. § 824. Such a suspension, or such a seizure, may be invoked *only* to avoid imminent danger to the public health and safety. In the absence of that factor there can be no suspension and no seizure without notice and an opportunity to be heard. Moreover, when such action is taken, it survives only so long as it goes undissolved by a court of competent jurisdiction.

In the absence of that indispensable element, imminent danger to the public health and safety, all else was beside the point. It was thus of no moment that in granting the temporary restraining order the district judge omitted a recitation of the magic words generally appearing in such: (1) a substantial likelihood Norman Bridge would prevail on the merits;

(2) that the temporary restraining order would not disserve the public interest; and (3) that the threatened injury to Norman Bridge outweighed the injuries appellants would suffer from the temporary restraint.

From this record, it cannot be said that the finding of no imminent danger is clearly erroneous. The illegal sales for which Vann was indicted had been made to only one individual. None of the sales were for narcotics such as heroin or morphine. Vann's conviction, for the sale, without a prescription, of 100 Didrex tablets had been in effect for more than six months; the alleged discrepancies in the drugstore records had been known for approximately seven months. Genuine apprehension of imminent danger to the public health and safety could reasonably have been expected to cause prompt notice and an equally prompt hearing.

It is quite well known that the office of a temporary restraining order is to preserve, for a very brief time, the *status quo*, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction. We cannot see how the District Court in this case could have effectively discharged the function imposed upon it by Congress if it had not the power to preserve this *status quo* pending a hearing. It would be a distortion of the statutory scheme to hold that the Court first had to allow the drug inventory to be dismantled and the customers to be dispersed.

■ We agree with Judge Johnson that the appellants should not have chosen disobedience as the method of testing the court order. This method lacks precedential support for the simple reason that the great weight of authority holds it to be inappropriate. See cases cited, *supra* ; also, *McCann v. New York Stock Exchange*, 2 Cir. 1935, 80 F.2d 211, 214, *cert. denied*, 299 U.S. 603, 57 S.Ct. 233, 81 L.Ed. 444 (1936); *Locke v. United States*, 5 Cir. 1935, 75 F.2d 157, *cert. denied*, 295 U.S. 733, 55 S.Ct. 644, 79 L.Ed. 1681 (1935).

■ This latter point aside, we hold that the temporary restraining order as to the return of the seized drugs was validly entered. The appellees were entitled to the benefit of the order. The appellants had no justification for trying to ride roughshod over it. The joint $500 compensatory fine cannot be reversed.

We are not unmindful of the fact that on January 15, 1976, effective thirty one days after publication, as mentioned *supra*, Norman Bridge's registration was revoked and there was a refusal to renew it solely on the ground that Mr. Vann had been convicted of the sale of a controlled substance. The order, as published in the Federal Register, allows Norman Bridge during the thirty one day period to dispose of all controlled substances in its possession in a lawful and regular manner. Apparently, the imminent public danger claim had evaporated.

The Judgment of the District Court assessing the $500 compensatory fine is affirmed.

The Judgment awarding the preliminary injunction is vacated, as moot, and the case is remanded to the District Court with directions to dissolve the injunction for mootness.

SO ORDERED.

### APPENDIX

*Findings and Conclusions of
Judge Johnson*

THE COURT: All right. I have studied the depositions and the pleadings, and I am prepared to make my Findings and Conclusions; I do now make them.

In the criminal case, the Court finds that the defendants, Banner and Hollinshead, each had notice of Judge Varner's injunction that was issued in this case on November 12, 1974, for a substantial period, that is, several days prior to the time the drugs were actually returned on November 19; that their failure to return the drugs earlier constituted a violation of the Court order that was issued by Judge Varner—however, the Court finds that there was no intent, no contu-

macious intent, on the part of either Michael Banner or the defendant, Robert Hollinshead, that would and will justify the Court finding either of them guilty of criminal contempt. The intent feature has not been proved to the satisfaction of the Court as to either of the defendants beyond a reasonable doubt.

Accordingly, in the criminal case, 74–188–N, it is the Order, Judgment, and Decree of the Court that Michael Banner and Robert Hollinshead be and each is hereby found not guilty.

In the civil proceeding, the Court is of the opinion that actual notice is necessary and that actual notice was had by Banner and Hollinshead for some period of time prior to the time the drugs were returned on November 19, 1974, and sufficiently prior thereto so that they could have been returned several days earlier. I am convinced that the law does not require proof of an intent to violate an order in a civil contempt proceeding. The evidence is clear and convincing that each of the defendants in the civil contempt proceeding had notice and did violate the order.

Advice of counsel is no defense. The evidence in this case reflects that Hollinshead and Banner were acting upon advice of at least one of their lawyers, and I would say the primary lawyer who was handling the proceeding in the Court in this District that was pending at that time. While it's no defense, it does go in mitigation; and the Court finds that advice of counsel constitutes mitigation in this case.

Norman Bridge is entitled to a judgment in damages based upon the contempt of Hollinshead and Banner, but the Court finds that the damages claimed by Norman Bridge, or to award all of them, would be an excessive award against these defendants. The Court reduces it—I don't reduce it, I just don't award anything in excess of five hundred dollars to Norman Bridge for the civil contempt.

So as to make it clear: In the civil contempt proceeding, the Court finds that Michael Banner and Robert Hollinshead each had notice of Judge Varner's order of November 12, 1974; that they failed to comply with that portion of the order requiring the return of the drugs for several days prior to the time the drugs were actually returned on November 19, 1974. That constituted civil contempt as far as each of them was concerned. It is the Order, Judgment, and Decree of the Court that Michael Banner and Robert Hollinshead be and each is hereby found guilty of civil contempt of this Court for failure to comply with the temporary injunction issued by the Honorable Robert E. Varner on November 12, 1974. It is the further Order, Judgment, and Decree of the Court that Robert Hollinshead and Michael Banner, jointly—not separately—be and they are each fined the sum of five hundred dollars.

Any further Findings I need to make in the criminal proceeding?

MR. THOMAS W. THAGARD, JR.: No, Your Honor.

THE COURT: Any further Findings I need to make in the civil proceeding?

MR. RICHARD A. BALL, JR.: Your Honor, on the taxing of costs.

THE COURT: Costs are taxed against the defendants, Banner and Hollinshead. Do you know of any further Findings I need to make in either the civil or criminal proceedings in order to dispose of all the issues that are presented?

\* \* \* \* \* \*

MR. MacKINNON: I understand, Your Honor. We were just wondering if you might take under advisement postponing the payment of the fine.

THE COURT: The legality or illegality of Judge Varner's order will not change the Findings or Conclusions that I made in either the civil or criminal contempt; they had to comply with the order, whether it is legal or illegal.