**In re ROGERS OIL COMPANY, Debtor.**

**Jill JACOWAY, Trustee in Bankruptcy, Plaintiff,**

v.

**Mike CARPENTER, Defendant.**

Bankruptcy No. FA–81–16.
Adv. No. 81–640.

United States Bankruptcy Court,
W. D. Arkansas,
Fayetteville Division.

Jan. 28, 1982.

**320**

Jill R. Jacoway, Fayetteville, Ark., for plaintiff.

John Henry, Fayetteville, Ark., for defendant.

ORDER DIRECTING THE DEFENDANT TO PAY $250.00 FINE PREVIOUSLY IMPOSED AND $277.00 IN ATTORNEY'S FEES WITHIN 20 DAYS OF THE DATE OF ENTRY OF THIS ORDER

DENNIS J. STEWART, Bankruptcy Judge.

In its former order of November 16, 1981, this court adjudged the defendant, Mike Carpenter, in Civil Contempt of court for failure and refusal to turn over the sum of $2500.00 to the plaintiff trustee in bankruptcy and imposed a fine of $250.00. Subsequently, in its order dated December 18, 1981, the court further directed payment of $277.00 to the trustee in bankruptcy as her attorney's fees reasonably expended by her in securing the defendant's compliance with the court's prior order. Because the defendant had not paid the amounts required in the time limits provided by those orders, this court directed his appearance before it on January 5, 1982, in Little Rock, Arkansas. The defendant did not appear before the court, as directed, on that date.

Thereafter, under the date of January 13, 1982, the plaintiff trustee in bankruptcy wrote the court as follows:

"On December 31, 1981, I received a phone call from John Henry, an attorney for Mike Carpenter about the Judgment against Mr. Carpenter. Mr. Carpenter's attorney said that Carpenter was interested in buying the tanks, that he had a buyer in another state who was ready to purchase the tanks from him. However, Carpenter was not yet able to deliver the money to me for the tanks. He also asked for several concessions before delivering any funds to me.

I must admit that I was not at all easy to deal with in lowering the amount I wanted for the tanks or agreeing to contact you about the hearing on the attorney's fees or contempt in light of the fact that the estate already had judgment and a hearing had already been set. I told him when the funds were received we would then discuss the contempt and the attorney's fees. I must admit, I was skeptical as to whether the funds would actually arrive.

I then left town and did not return to my office until January 11. When I arrived, I found that Carpenter had brought in a check on January 7, two days after the scheduled Little Rock hearing. I have now deposited the $2500.00 check and have complied with your December 18 Order to sell the items.

I am sorry that this information was not available to you prior to the January 5 hearing, but I was not sure before I left that I would in fact receive the funds.

I have not communicated with Mr. Carpenter or his attorney since receiving the funds.

I will wait for further Orders from you on the Contempt of Court and/or the attorney's fees.

If I can answer any questions for you, please do not hesitate to call."

The fact that the defendant has now paid the $2500.00 for purchase of the subject chattels according to a prior order of

the court, however, does not absolve him from the duties also imposed by this court's prior orders to pay a $250.00 fine and $277.00 in attorney's fees to the plaintiff trustee in bankruptcy. These duties stem from an unappealed, final Order adjudging him to be in civil contempt of this court and imposing a "coercive" fine ($250.00) and a "compensatory fine." "[T]he very purpose of a civil contempt proceeding, unlike its criminal counterpart, is to coerce compliance with an order of the court and to compensate a party litigant for injuries occasioned by the contemnor's noncompliance." *In the Matter of Preferred Surfacing, Inc.*, 3 B.C.D. 94, 96 (N.D.Ga.1976); *In re Brooks*, 12 B.R. 283, 285 (Bkrtcy.W.D.Mo. 1981). "Civil contempt divides into two general classes: Coercive and compensatory. Both classes benefit the injured litigant, but in different ways. Coercive civil contempt is intended to make the recalcitrant party comply. Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of the adversary's noncompliance." *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976). When the time for direct appeal from this court's orders imposing the fines has elapsed, their validity and enforceability cannot be collaterally attacked. "If an appeal of the referee's order is not taken, that order has the force and effect of an order of the district court and is *res judicata* as to the merits. The parties' right to complain of the order is effectively lost, except for possible reconsideration by the referee himself, and the order is not subject to collateral attack in the district court." 2A Collier on Bankruptcy § 39.29, pp. 1540.5, 1540.6 (1978). It is beyond the power of the trustee to effect any compromise or settlement of such fines, for they have been imposed by the court as a means of securing compliance with its orders. To empower the officers of the estate to compromise the fines would mean that the judicial power might always be upset or overturned by nonjudicial officers charged with administration of the estate. And the court itself, under such a practice, would soon find itself bereft of the ability to enforce its own orders.

Nor should the court now reconsider the prior orders imposing the coercive and compensatory fines, not only for the reasons given above, but because the fines resulted from a repeated failure and refusal of the defendant, not only to make the payment of $2500.00 in the time prescribed by the court for payment, but also to appear before the court according to its orders. A person subject to a court's orders is not privileged to test their validity or power by disobedience rather than by availing himself of the available remedies of seeking appropriate review by appeal or otherwise. "[D]isobedience as the method of testing the court order . . . lacks precedential support for the reason that the great weight of authority holds it to be inappropriate." *Norman Bridge Drug Co. v. Banner, supra*, at 829. And, as of this precise moment in time, the defendant, Mike Carpenter, continues to be in civil contempt of this court, both for his failure and refusal to pay the fines of $250.00 and $277.00 within the time commanded by this court in its prior orders and for failure to attend the hearing of January 5, 1982, which this court's order of December 18, 1981, expressly directed him to attend. As the foregoing considerations make clear, the defendant could not be excused from attendance at the hearing of January 5, 1982, except by an order of the court excusing him. To simply absent himself from the hearing without first securing such an order only constitutes another in what is a growing chain of contempts. And it must be remembered that continuing failure to abide by the court's prior orders to pay the fines and to appear before it for the hearing which have proven necessary to be fixed to enforce the orders of the court can only be made the bases of successive civil contempt citations and an ever-growing monetary liability for fines exacted as the means of collecting other unpaid fines.

It is the defendant who holds the key to unburdening himself of the potential of this possible ever-increasing liability. For he can do so by bringing himself in compliance with the court's orders and thereby purging

himself of contempt. "Civil contempt proceedings look only to the future [and] the contemnor must be in a position to purge himself." 17 Am.Jur.2d *Contempt* § 4, p. 8 (1964). This he will be permitted to do by paying the $250.00 and $277.00 within 20 days of the date of entry of this order and by filing, within the same 20 days, a statement in writing and under oath explaining or excusing his nonattendance at the hearing of January 5, 1982.

It is therefore, for the foregoing reasons,

ORDERED, that within 20 days of the date of entry of this order, the defendant, Mike Carpenter, pay the coercive fine of $250.00 and the compensatory fine of $277.00 and file a statement in writing and under oath explaining or excusing his nonattendance at the hearing of January 5, 1982.