**In the Matter of John Rothwell KNAUS, Debtor.**

**John Rothwell KNAUS, Plaintiff,**

v.

**CONCORDIA LUMBER CO., INC., d/b/a Knob Noster Fertilizer Co., and Charles Norman, Defendants.**

**Bankruptcy No. 84–02303–3–11.**
**Adv. No. 84–0342–3–11.**

United States Bankruptcy Court, W.D. Missouri, W.D.

Jan. 22, 1985.

Stephen B. Strayer, Kansas City, Mo., for plaintiff.

James W. Henry, Martin & Henry, Kansas City, Mo., for Concordia Lumber Co.

Robert E. Harris, Robert E. Harris, P.C., Warrensburg, Mo., for Charles Norman.

**ORDER DENYING THE PLAINTIFF'S MOTION FOR RECONSIDERATION OR TO ALTER OR AMEND JUDGMENT OR FOR NEW TRIAL**

DENNIS J. STEWART, Bankruptcy Judge.

On December 19, 1984, this court issued its final judgment in this controversy awarding damages in the sum of $1,020.00 to the plaintiff. This was less than the total sum of damages sought by the plaintiff, who desired to be compensated for

certain contracts allegedly lost by reason of the repossession of certain farm implements. This court did not award compensatory damages for this alleged loss on two grounds: (1) that the violation of the automatic stay was only innocent conduct insofar as it interfered with contracts of which the defendant Concordia Lumber Company had no reason to know and (2) that the plaintiff did not demonstrate that the expenses and costs of performing such contracts would be of such magnitude that he would have been able to earn a profit on those contracts.[1] The plaintiff now moves for reconsideration or to alter and amend that judgment or, in the alternative, for a new trial.

It is the initial contention of the plaintiff in his postjudgment motion that a new trial should be granted in order to permit him to offer proof that his testimony concerning his contractual losses was as to loss of profits only; that he had, in rendering his testimony in this regard, intended only to mention the amount of lost profits; and that the court, in rendering its judgment to the effect that proof of loss was uncertain when no subtraction for expenses had been testimonially made, misunderstood the testimony to be testimony only as to the contract price.[2]

But it is the well established duty of a plaintiff suing for damages to offer evidence as to the prospective expenses which would be incurred in performing a contract in order to enable the court to determine whether the making of a profit would be a likelihood. "One seeking to recover damages for breach of contract must ordinarily establish that he could have realized a profit or benefit on a full performance of the contract. So, where it is obvious that plaintiff would have more than trivial expense in performing his part of the contract and that the profit on the contract would be substantially less than the contract price, the mere introduction of the contract and a showing of its breach does not make out a prima facie case of damages for the unpaid contract price." 25A C.J.S. *Damages* § 162(11), p. 116 (1966). In this action, however, the evidence which was adduced did not admit of the court's employing the subtraction process in order to determine the likelihood of profit and its probable magnitude. The rules which govern the issue of finality of judgments do not permit a court to reopen a judgment on a simple showing of failure to adduce material evidence unless it is stated and shown that such evidence is newly-discovered evidence which could not have been discovered, in the exercise of due diligence, in time for

---

1. On the first issue, the court, in the challenged judgment, concluded that "(t)he result in a case such as that at bar may well be different if it were shown that the debtor was notoriously in the business of custom work or that the defendant, when violating the automatic stay, had knowledge of the existing contracts for certain work. But, in the absence of such evidence, when *intentional* violation must be the causation of the damages awarded, it cannot be said that the defendant intentionally interfered with the performance of such contracts." On the latter issue, it was stated as follows in the challenged judgment: "Further, even if it were shown that it is proper to award the loss of profits on such contracts, the evidence which has been adduced in this action does not afford an adequate basis for determining what prospective profits were lost. Virtually all that is shown on this issue is that, according to the oral testimony of the plaintiff, there were oral contracts in existence at the time of defendant's violation of the automatic stay under the terms of which the plaintiff expected to be paid certain amounts of money. The evidence fails to demonstrate, however, that any or all of these expected payments would have been profit. Sufficient evidence has not been adduced as to the expenses which might reasonably have been expected to be incurred in connection with the custom work, and, in the absence of such sufficient evidence, it would amount to sheer speculation by the court to determine a certain amount of the expected income to be expected profit and award compensatory damages in that sum."

2. In his postjudgment motion, the plaintiff states that "the amount of damages testified to by the plaintiff was undisputed. Although not specifically designated as profits, it was Plaintiff's intention to state those sums which he would have received as moneys paid to him over and above expenses. Therefore, plaintiff seeks the opportunity to explain his testimony further to the Court so that the Court may have a sound basis on which to find loss of profits."

the trial.[3] This principle is so fundamental that virtually no exception to it can be found in the decisional annals.[4]

■ The plaintiff, nevertheless, relies upon a recent bankruptcy court decision found by his worthy counsel, which appears to hold that a bankruptcy court may *sua sponte* and without notice or hearing reopen a judgment when it appears that one party may have, through inadvertence, failed to adduce evidence which is material to its claim or defense. *In re O'Connor*, 42 B.R. 390 (E.D.Ark.1984).[5] Application of that precedent in cases such as that at bar, however, would fatally undermine the essential judicial concepts of stability and finality of judgments and make justice al-most wholly a question of the vicissitudes of judicial personality.[6] This court, however, finds no error in the *O'Connor* decision so long as its applicability is restricted to its own facts and therefore applies only to clerical omissions or errors in stipulations or judgments which have been prematurely entered.[7] In this action, however, there has been a full evidentiary opportunity and to permit another evidentiary opportunity without any appropriate statement or showing of newly-discovered evidence would be to violate the principles of law and goals of justice set out above.

In *Matter of Walters*, 41 B.R. 511 (Bkrtcy.W.D.Mo.1984), a case which bears some similarity to that at bar, this court

---

**3.** "To constitute newly discovered evidence for which a new trial may be granted under Rule 59, the evidence must pertain to facts in existence at the time of the trial, and not to facts that have occurred subsequently. As to the latter, relief, if any, must be obtained by an appropriate motion under Rule 60(b). To warrant a new trial the evidence must not have been known to the movant at the time of the trial; and, moreover, the movant must have been excusably ignorant of the facts, i.e., the evidence must be such that it was not discoverable by diligent search." 6A Moore's Federal Practice para. 59.-08(3), p. 59–100 (1984).

**4.** "A party who has failed to evaluate evidence properly and thereby failed to submit it at the trial, or a party who desires to present his case under a different theory in which facts available at the original trial first become important, will not be granted a new trial." 6A Moore's Federal Practice para. 59.08(3), p. 59–100 (1984).

**5.** In the *O'Connor* case, a contempt matter was submitted on stipulation. There were two defendants in the case, one of whom, according to the findings made at 42 B.R. 391, received notice of the filing of the bankruptcy petition. Apparently, however, the stipulation did not specify which of the defendants actually accomplished the garnishment which was held to violate the automatic stay. The court, therefore, rather than concluding that the plaintiff had not met its burden of proving who the guilty party was, rendered a judgment but reopened the hearing to receive evidence as to the identity of that guilty party. See 42 B.R. at 393, to the following effect: "The stipulation entered into by the parties did not state whether it was the Hospital or Credit Management which determined to proceed in violation of the automatic stay. The Court will, in the interest of justice, reopen the record for purposes of receiving evi-dence in this regard. The Court intends to fine the cupable party $700, plus attorney's fees and costs to the debtor, and the immediate return of the property obtained in violation of the stay." Ordinarily, if relief is granted from a stipulation on a matter of substance, it can be done only after an appropriate application of a party in interest. "Ordinarily, the proper procedure for the vacation of a stipulation is by a motion or other appropriate application in the proceeding ... And a litigant who desires to be relieved from a stipulation into which he has entered in the course of a judicial proceeding must make a seasonable application for such relief." 73 Am. Jur.2d sec. 13, p. 550. And "(t)he general rule is that parties are bound by stipulations voluntarily made and that relief from such stipulations after judgment is warranted only under exceptional circumstances." *Farmers Coop. Elevator Assn. Non-Stock of Big Springs, Nebraska v. Strand*, 382 F.2d 224, 230, 232 (8th Cir.1967). Thus, relief from a stipulation is to be had, under ordinary circumstances, only for fraud, mistake, or inadvertence or "(w)hen a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C.Cir.1980). Thus, when the stipulation has been induced by fraud or by clerical error or is itself a clerical error would seem to be the only instances in which the court would be justified in acting on its own initiative in granting relief from a stipulation.

**6.** "There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 211–12, 95 L.Ed. 207 (1950).

**7.** See note 5, *supra*.

held that modification of the judgment was warranted by reason of a plaintiff's testimony as to value of property which her counsel and the court had understood to be testimony as to fair market value but which she intended to be testimony of the purely subjective value of the property to her. In that instance, the court held that the common misunderstanding was a form of extrinsic mistake which prevented the fair presentation of claims or defenses and the introduction of relevant and material evidence.[8] In this case, however, there has been a full evidentiary opportunity, unimpaired by any such extrinsic mistake, in which plaintiff and his counsel actually introduced the evidence which they intended to introduce. To rule now that any deficiency in that evidence may be cured through a new trial would be to disturb the notions of justice and fairness underlying the law governing new trials.

Accordingly, this court is compelled to hold that a new trial may not be granted in order to enable the plaintiff to demonstrate that expenses and costs need not be subtracted from the contract values previously evidenced. The same rule applies to plaintiff's offer now to demonstrate that defendant knew or should have known of the existence of these contracts and that plaintiff's testimonial estimates of the value of the contracts was conservative.[9]

It is therefore, for the foregoing reasons,

ORDERED that the motion of plaintiff for reconsideration or to alter and amend judgment or for new trial be, and it is hereby, denied.

---

8. "In this case the mistake was mutual, in that the court and counsel for the debtor assumed that her testimony was as to its fair market value. It was also extrinsic. This is determinable by analogy to the definition which is used for extrinsic fraud. 'Fraud is extrinsic where a party is prevented by trick, artifice, or other fraudulent conduct from fairly presenting his claim or defenses or introducing relevant and material evidence.' 7 Moore's Federal Practice para. 60.37(1), pp. 60–374, 60–375 (1983). In this action, the mistake would have prevented the court from considering the evidence in its proper light and therefore can be said to have prohibited the consideration of the material portion of the evidence." *Matter of Walters*, 41 B.R. 511, 515, n. 4 (Bkrtcy.W.D.Mo.1984).

9. In the motion which is now before the court, the plaintiff states that his "counsel believes that plaintiff grossly understated his loss of profits at the hearing. This, for the reason that plaintiff states that he was only stating the amount that he lost for drilling of seed without further indicating the entire amount of the contract due him. If given the opportunity, plaintiff will testify that his contract for 760 acres of soybeans was for the sum of $45.00 per acre for drilling, spraying, working the ground and harvesting ... Secondly, with regard to John Schnakenberg's knowledge of plaintiff's business and contracts, plaintiff will introduce evidence that Schnakenberg was well aware, not only that plaintiff was notoriously in the business of performing custom work for the farmer, but of the specific contracts held by plaintiff for custom work, with which Schnakenberg intentionally interfered in violating the automatic stay." With respect to these offers of proof, no statement or showing is made to bring them within the category of newly-discovered evidence as defined in note 3, *supra*.