**In the Matter of Paula KAISER, Debtor.**

**Paula KAISER, Plaintiff,**

**v.**

**LEADER FEDERAL BANK FOR SAVINGS f/k/a Leader Federal Savings and Loan Association, Assignee, Defendant.**

**Bankruptcy No. BK90–41403.
Adv. No. A91–4130.**

United States Bankruptcy Court,
D. Nebraska.

July 14, 1993.

Vincent M. Powers, Lincoln, NE, for debtor-plaintiff.

Michael A. Smith, Omaha, NE, for defendant.

## MEMORANDUM

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

The debtor commenced this adversary proceeding on August 27, 1991, contending that Leader Federal Bank for Savings, f/k/a Leader Federal Savings and Loan Association ("Leader Federal"), her mortgagee, violated the automatic stay by entering her home without permission and removing personal property. The complaint asserts that the actions by the defendant constituted trespass and violation of the automatic stay. A trial was held on February 26, 1993. Mr. Vincent M. Powers appeared for the debtor. Mr. Michael A. Smith appeared for Leader Federal. The uncontroverted facts set forth in the Joint Preliminary Pretrial Statement (Fil. # 14) were taken as established for purposes of the trial. I conclude that the automatic stay was violated and that damages, including punitive damages, should be assessed against Leader Federal.

## FACTS

Leader Federal holds a first mortgage on the debtor's residence. On October 15, 1990, prior to the commencement of this bankruptcy case, Leader Federal accelerated the unpaid balance of the mortgage note. On October 31, 1990, the debtor filed a Chapter 7 petition. On November 5, 1990, Leader Federal retained Mortgage Service Associates to secure the mortgaged premises. On November 10, 1990, without any attempt to contact the debtor, Mortgage Service Associates entered the debtor's home and removed all the personal property remaining in the premises. The debtor had decided to move out of her home sometime prior to November 10, 1990, and was in the process of removing the last of her possessions on that date. Mortgage Service Associates winterized the home at the time of entry, draining the water heater and water lines and adding antifreeze to various drains. Mortgage Service Associates also braced the back door of the home, ensuring that the door could not be opened. A new lock was installed on the front door. In accordance with its standard operating procedures and policies, Mortgage Service Associates threw away all the property removed from the debtor's premises. Leader Federal has not turned over to debtor the removed personal property, nor has Leader Federal accounted for any of the removed personal property.

Leader Federal received actual notice prior to November 10, 1990, of the pendency of this bankruptcy case. The Clerk of the Bankruptcy Court sent timely notice of the bankruptcy proceeding and the first meeting of creditors to all parties listed on the debtor's matrix, including Leader Federal. Leader Federal failed to offer any evidence that it did not receive notice of the bankruptcy. In fact, Leader Federal's counsel suggested in oral arguments that there had been sufficient time to receive notice.

■ Leader Federal was granted relief from the stay on December 19, 1990. However, the court's lifting of the stay is irrelevant to the question of whether Leader Federal had previously violated the stay in November of 1990.

Mr. Steve Lynn was the only witness who testified for Leader Federal. Mr. Lynn is a sole proprietor who did business under the name of Mortgage Service Associates in November of 1990. On about November 5, 1990, Leader Federal asked Mr. Lynn to inspect and secure the debtor's residence and Leader Federal instructed Mr. Lynn not to contact the homeowner. Steve Lynn hired Michael Cain to do the

work. Michael Cain was instructed not to contact the homeowner. Michael Cain was not a witness at trial.

Although Mr. Lynn received from Michael Cain a report and some photographs of the property removed from the debtor's home. Mr. Lynn had no other direct knowledge about the specific events which took place on November 10, 1990. He simply testified about the standard operating procedures and policies followed by Mortgage Service Associates in securing mortgaged premises. Mr. Lynn did not know whether those specific procedures were followed in this case.

Mr. Lynn stated that it was his general policy to follow the guidelines developed by the Department of Housing and Urban Development ("HUD" guidelines). Upon request to secure a house, a visual inspection of the home is made to determine whether it is vacant. If the premises are vacant, the dwelling is entered. If necessary, a locksmith is used to gain access to the premises. Depending on the orders of the client, Mortgage Service Associates verifies that all utilities are turned off. All or some of the locks to the dwelling are changed. Trash and hazardous debris are removed from the premises and loaded on a truck. Mr. Lynn testified that it is standard policy to photograph the contents of the mortgaged premises before anything is removed. Additional photos are taken of the truck after it is loaded with the trash and other contents of the home. Mortgage Service Associates routinely throws away the personal property removed from mortgaged premises. No inventory is taken of the property and no information or notice is provided to the owner of the property. Leader Federal hired Mortgage Service Associates to secure homes on several previous occasions and, according to Mr. Lynn's testimony, Leader Federal was aware of the policies which Mr. Lynn followed. Leader Federal hired Mortgage Service Associates for the specific purpose of securing debtor's home.

On the facts of this case, Mr. Lynn takes the position that the personal property which was removed from the debtor's premises was trash and was therefore properly discarded. However, he has no direct knowledge or information about what was located on the premises other than the report and photographs he received from Michael Cain. I base my conclusions about the property upon the photographs and the testimony of debtor, Paula Kaiser.

I found Paula Kaiser's testimony to be very credible. Paula Kaiser is a single individual who had been experiencing financial difficulties for several months before she filed bankruptcy. She could not afford to maintain her mortgage payments, and she decided to attempt to sell her home. She listed the property with a realtor, and there was a "For Sale" sign located in front of the home until October 23, 1990. When Ms. Kaiser was unsuccessful selling the property, she decided to file bankruptcy and to surrender the home to Leader Federal. She informed Leader Federal that she was going to file bankruptcy, and she acted in good faith. It appears that Ms. Kaiser, unlike many bankruptcy debtors, elected to surrender her home and not unduly delay the mortgage holder during the pendency of the bankruptcy case.

Ms. Kaiser was in the process of moving out of her home on November 10, 1990. She had removed all of her large items of furniture prior to that time, including the living room furniture, bedroom furniture, stove, refrigerator and dishwasher. The personal property which remained in the home on November 10, 1990, was arranged in an orderly fashion. There were approximately ten (10) boxes of personal property located in the living room at the time that Mortgage Service Associates entered the premises. Some mirrors and pictures were leaning neatly against the wall. A reasonable person would not have considered that the personal property was abandoned, nor would they consider the personal property to be garbage or trash. For example, it is highly unlikely that some of the items which remained, such as pictures of the debtor's child, would be abandoned. Mr. Steve Lynn testified that it was the policy of Mortgage Service Associates not to go

through boxes. All boxes are simply thrown away. I conclude that if Leader Federal, or Mr. Lynn, had inspected the personal property located in the debtor's home, they would have concluded that the debtor had not abandoned the property. I conclude, as a finding of fact, that Paula Kaiser had not abandoned the items of personal property that remained on the premises and which were removed by Michael Cain. I further conclude that the items were not trash or a fire hazard.

On November 10, 1990, Paula Kaiser went to her home and removed some boxes. Thereafter, and without her knowledge, Mr. Cain entered her home and removed the personal property which remained on the premises. Later that same day, Paula Kaiser received a telephone call from a woman who asked Ms. Kaiser whether she wanted her photo albums back. Ms. Kaiser informed the woman that she did want the photo albums back. When Ms. Kaiser went to the caller's home to pick up the albums, the woman stated that she was one of Michael Cain's neighbors. Later that same day, Paula Kaiser returned to her home and discovered that her personal property had been removed. She called the police and made a police report. The only other item of personal property which Paula Kaiser was able to recover was a trunk.

### CONCLUSIONS OF LAW

■ After this bankruptcy case was filed, Leader Federal violated the automatic stay of 11 U.S.C. § 362(a)(3) by retaining Mortgage Service Associates to exercise control over property of the bankruptcy estate. Any right which Leader Federal had under applicable non-bankruptcy law, such as HUD regulations, to exercise control over the property of Ms. Kaiser was limited by § 362 upon the filing of this bankruptcy case. A similar application of § 362 is illustrated in the more familiar context of the UCC Article 9 secured creditors whose statutory right to self help repossession is stayed by § 362. Similarly, upon the commencement of this bankruptcy case, Leader Federal was enjoined by § 362 from directly or indirectly exercising

control over property of the bankruptcy estate, any HUD regulations notwithstanding.

■ Similarly, Leader Federal violated § 362(a)(3) by taking possession of property of the estate. In connection with my conclusions that § 362(a)(3) was violated, I conclude that debtor's personal property and real property were property of the bankruptcy estate under § 541 on November 10, 1990, which was the date the property was removed from debtor's home. The trustee did not file a Notice of Intent to Abandon Property (Fil. # 9) until December 5, 1990. The property of the estate was not abandoned until after Leader Federal had violated the stay. See 11 U.S.C. § 554 (1993).

■ Finally, Leader Federal violated the stay by its failure to surrender and turn over the personal property it caused to be removed. *Cf. In re Knaus*, 889 F.2d 773, 775–76 (8th Cir.1989) (holding that failure to turn over property of the estate taken prepetition violated the automatic stay). This failure to turn over property is compounded by a continuing failure to account for the property.

■ The violation of stay was willful in that after notice of the pendency of the bankruptcy case, Leader Federal voluntarily took action to exercise control over property of the estate.

Under § 362(h), Ms. Kaiser is entitled to recover actual damages, including costs and attorney's fees, and in appropriate circumstances, punitive damages.

■ Leader Federal should be required to pay the debtor compensatory damages in an amount equal to the value of the items of personal property removed from the premises. I conclude that the value of the property removed from debtor's home was $670.00. In addition, I conclude that the debtor should be compensated for those items which are of sentimental value to her, even though they have only nominal cash value. *See Matter of Walters*, 41 B.R. 511 (Bkrtcy.W.D.Mo. 1984). I conclude that Leader Federal

should compensate the debtor in the amount of $500.00 for these items of sentimental value. In addition, Leader Federal, should pay Ms. Kaiser reasonable attorney fees in connection with reopening this bankruptcy case and prosecution of this adversary proceeding.

 I also conclude that this is an appropriate case for the imposition of punitive damages. I reach this conclusion based in large part on my observations of Mr. Steve Lynn on the witness stand. He and his company acted with a callous and willful disregard for the rights of the debtor. Based on his testimony, I conclude that the procedures which were followed in this case reflect standard operating procedures and policies. Furthermore, I conclude that Leader Federal had knowledge of the policies and procedures which Mr. Lynn customarily followed. Leader Federal did exercise some control over Mr. Lynn and Mortgage Service Associates in that Leader Federal instructed Mr. Lynn not to contact the debtor by telephone. I conclude it is appropriate to impose punitive damages to dissuade Leader Federal from retaining persons like Mr. Steve Lynn and his company, or other persons of similar disposition. I am quite frankly surprised that in this day and age, a creditor would take possession of personal property of a debtor and then throw it away. Leader Federal has offered no explanation for what occurred. Leader Federal called no witness other than Mr. Lynn. Leader Federal has offered no credible evidence of mitigating factors. Leader Federal has utterly failed to come forward with credible evidence as to what occurred.

The stay was violated, the debtor's rights were disregarded, and her property has yet to be accounted for. I conclude that punitive damages should be assessed against Leader Federal in the amount of $7,500.00. I further conclude that Leader Federal should be deprived of any deficiency claim which it may have against debtor respecting the mortgage loan, it being my intent that Leader Federal shall have no offset respecting the damages imposed by this order.

By separate judgment entered contemporaneously herewith, the court will award Paula Kaiser damages against Leader Federal for $650.00 for personal property, $500.00 for sentimental value, and $7,500.00 for punitive damages. The judgment will also bar any offset or recoupment claim of Leader Federal. As ordered below, separate procedures will be followed to determine the amount of attorney fees and expenses to be awarded to debtor's counsel.

IT IS HEREBY ORDERED, that within twenty-one (21) days hereof, Mr. Vincent Powers, attorney for plaintiff herein, shall file a written statement of his fees and expenses with the Clerk of the Bankruptcy Court with a copy served upon counsel to defendant, Leader Federal. Leader Federal shall have fourteen (14) days thereafter in which to object to the amount of the attorney fees and/or expenses. If no timely objection is filed, then fees and expenses shall be allowed by separate judgment in the amounts set forth in Mr. Vincent M. Power's statement, upon his request. If a timely objection is filed it shall be scheduled for hearing.

IT IS SO ORDERED.